DITZIK v SCHAFFER LUMBER COMPANY

Docket No. 73036. Submitted June 6, 1984, at Lansing.—Decided
September 24, 1984. Leave to appeal denied, 422 Mich 853.

Plaintiff, Arthur J. Ditzik, doing business as Tyler Realty &
Investment Company, brought an action against Schaffer Lum-
ber Company, Union Construction Company and Allen W.
Schaffer for payment of a commission on a sale of a business
and real estate. Plaintiff, through an agent, entered into a 20-
day listing agreement with Schaffer Lumber Company which
provided that a commission would be paid if the business or
real estate was leased or sold within 12 months to anyone with
whom the agent had "negotiations, offered, or dealt with"
during the 20-day term of the agreement. The agreement also
provided that there were no other agreements regarding the
offer to sell. No purchaser was found during the 20-day term of
the agreement, but the business was sold within 12 months to a
prospective purchaser whom plaintiff's agent had contacted
during the 20-day period. Plaintiff's agent did not make the
arrangements for the sale. Plaintiff brought this action to
recover the commission and the Jackson Circuit Court, James
G. Fleming, J., held in favor of the defendants. The trial court
held that the listing agreement had applied only to dealings
with a single prospective purchaser other than the one who did
purchase the business and that the agent's contacts with the
ultimate purchaser did not rise to the level of "negotiations,
offered, or dealt with" as provided in the listing agreement.
Plaintiff appealed. *Held:*

1. The trial court properly sustained objections to the intro-
duction of testimony which would contradict the language of

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 30 Am Jur 2d, Evidence § 1016 *et seq.*

Comment note on the parol evidence rule and admissibility of
extrinsic evidence to establish or clarify ambiguity in written
contract. 40 ALR3d 1384.

[2] 17 Am Jur 2d, Contracts § 264.

[3] 17 Am Jur 2d, Contracts § 251.

30 Am Jur 2d, Evidence §§ 1066, 1071.

[4] 17 Am Jur 2d, Contracts § 149.

[5] 12 Am Jur 2d, Brokers §§ 31, 33, 157, 252.

the written agreement. However, the court's ruling regarding the single-purchaser nature of the agreement did contradict the unambiguous language of the agreement, which nowhere indicated that the agreement was so limited.

2. The trial court's finding that the parties' arrangements pursuant to a previous listing agreement had established a course of dealing was clearly erroneous.

3. The court erred in determining that plaintiff's agent's contacts with the ultimate purchaser during the term of the agreement did not constitute negotiations, offerings or dealings with the purchaser as described in the agreement. The contacts made by plaintiff's agent constituted at least "dealing with" within the meaning of the agreement. Thus, plaintiff was entitled to the commission.

Reversed.

1. CONTRACTS — PAROL EVIDENCE RULE.

The parol evidence rule excludes evidence of prior agreements, in an action brought to enforce a contract, whether oral or written which contradict, vary or modify an unambiguous writing intended as a final and complete expression of the agreement.

2. CONTRACTS — PRIOR AGREEMENTS.

A binding, integrated agreement supersedes inconsistent terms of prior agreements and previous negotiations to the extent that it is inconsistent with them.

3. CONTRACTS — COURSE OF DEALING — JUDICIAL CONSTRUCTION.

A prior course of dealing between the parties to a contract cannot alter the clear and unambiguous language of the contract; where the provisions of a contract are clear and unambiguous the contract language is to be construed according to its plain sense meaning.

4. CONTRACTS — ENFORCEMENT OF CONTRACTS — FAILURE TO READ CONTRACT.

One who signs a contract will not be heard to say, when enforcement is sought, that he did not read it or that he supposed it was different in its terms.

5. CONTRACTS — BROKER'S COMMISSIONS.

A real estate broker's entitlement to a commission is governed by the language of the listing agreement.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Alan R. Dominick* and *Jo Anne Rosenfeld),* for plaintiff.

*Jerome A. Sussking,* for defendants.

Amicus Curiae:

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Gregory L. McClelland),* for Michigan Association of Realtors.

Before: GRIBBS, P.J., and BRONSON and SHEPHERD, JJ.

PER CURIAM. Plaintiff brought suit against defendants for payment of the commission on a sale of real estate. Following a bench trial, the trial court found in favor of the defendants. Plaintiff appeals as of right. We reverse.

On April 18, 1978, plaintiff, through his agent Austin W. Keathley, entered into a 20-day listing agreement with Schaffer Lumber Company, granting plaintiff the exclusive right to sell the lumber yard. In 1977, these same parties had entered into a 20-day exclusive listing agreement that did not produce a purchaser. The April 18, 1978, agreement provided:

"If during the said period the [Schaffer Lumber Company] business and/or real estate is sold or leased by the Undersigned or anyone else, or if you [Tyler Realty] produce a purchaser ready, willing and able to purchase or lease the business or real estate under the terms herein set forth, or if it is sold or leased within twelve (12) months after the expiration of this listing agreement to any person, corporation or its agents with whom you have had negotiations, offered, or dealt with during the term hereof, the Undersigned agrees to pay you a commission of Seven (7%) per cent of the selling price out of the first monies received."

The agreement also included the following integration clause:

"The above representations are a part of this offer to sell and there are no other representations or agreements."

The agreement was drafted by plaintiff's office.

Schaffer Lumber Company was sold to Erb Lumber Company in February of 1979, within twelve months of the listing period. After Mr. Schaffer refused to pay plaintiff a real estate commission for the sale, plaintiff filed suit.

At trial, Mr. Keathley testified that he contacted Erb Lumber on five occasions during the 20-day exclusive listing period. He testified that on the day after he received the listing agreement, he called three prospects, including Erb Lumber. On three occasions Mr. Keathley spoke with the secretary or switchboard operator at Erb Lumber and told her the pertinent details regarding the sale of Schaffer Lumber. According to Mr. Keathley, on April 25, 1978, he spoke with Fred Erb on the telephone and discussed the purchase price and the location of the lumber yard. On May 4, 1978, Mr. Keathley called Mr. Erb from Grand Rapids. He charged this call on his credit card, and the telephone bill was introduced confirming the call to Mr. Erb's telephone number. Mr. Keathley testified that, on this occasion, he discussed much the same information discussed earlier, in addition to financial and ownership specifics regarding Schaffer Lumber.

After the expiration of the 20-day listing period, Mr. Keathley continued to induce Erb Lumber to purchase Schaffer Lumber. He testified that on June 12, 1978, he called Mr. Schaffer and requested additional financial information. On June 13, 1978, Mr. Keathley prepared an information package, including a line survey, financial statements and a Dun and Bradstreet report on Mr.

Schaffer and Schaffer Lumber. Mr. Keathley testified that he met with Mr. Erb on June 15, 1978, regarding the acquisition of Schaffer Lumber. Mr. Schaffer did not try to discourage Mr. Keathley and talked to him a number of times after the meeting with Mr. Erb regarding Erb Lumber as a prospective purchaser.

In a letter dated June 15, 1978, Mr. Keathley reported to Mr. Schaffer that he met with Mr. Erb regarding a potential sale. Subsequent to the June 15, 1978, meeting, Mr. Erb asked Mr. Keathley to work with a vice president of Erb Lumber regarding the potential acquisition of Schaffer Lumber.

Mr. Keathley arranged for the vice president to visit Schaffer Lumber. However, on July 27, 1978, Mr. Keathley was informed that Erb Lumber was no longer interested in acquiring Schaffer Lumber. At that point, Mr. Keathley abandoned his effort to sell Schaffer Lumber to Erb Lumber. Mr. Keathley informed Mr. Schaffer that Erb Lumber was no longer interested in the sale.

Mr. Keathley had subsequent contact with Mr. Schaffer regarding potential sale to a James Duncan, one of Mr. Keathley's original prospects.

On October 25, 1978, Mr. Keathley telephoned Mr. Schaffer with regard to an ad Mr. Schaffer had placed in the Wall Street Journal regarding the sale of Schaffer Lumber. Mr. Schaffer told Mr. Keathley that he wanted to pursue the responses to the ad on his own.

In March of 1979, Mr. Keathley saw a newspaper article indicating that Erb Lumber had purchased Schaffer Lumber. Mr. Keathley called Mr. Schaffer and informed him that plaintiff was entitled to a commission.

Mr. Erb testified that he had nothing to do with negotiations relative to the purchase of Schaffer Lumber. He did not recall speaking with Mr.

Keathley or anyone else from the plaintiff realty company before June of 1978. He had notes from a telephone conversation with Mr. Keathley, but the notes were undated and he could not say when the conversation took place.

Mr. Schaffer testified that in April of 1978, Mr. Keathley called him and said that he had a buyer interested in purchasing the lumber yard. Mr. Schaffer testified that the 20-day listing agreement was entered into to protect plaintiff's right to a commission if a sale was negotiated with that particular buyer. After signing the agreement, Mr. Keathley notified Mr. Schaffer that the potential buyer was James Duncan. Mr. Schaffer testified that he had no conversation with Mr. Keathley about Erb Lumber until June 12 or 13, 1978, after the 20-day period expired.

Mr. Schaffer testified that, after running an ad in the Wall Street Journal, Mr. Keathley called him requesting an extension of the listing agreement. Mr. Schaffer declined. He stated that he gave no information regarding the property to Mr. Keathley during the conversation of June 12 or 13, 1978. He testified that he did not feel that plaintiff would be entitled to a commission unless the property were sold specifically to James Duncan within one year.

The sales agreement between Schaffer Lumber and Erb Lumber was entered into on November 4, 1978. All the negotiations took place between the two lumber company representatives. The sale became effective on February 28, 1979, before the 12-month period in the listing agreement had expired.

In the final agreement with Erb Lumber, Mr. Schaffer insisted on a clause requiring that they split the cost of any real estate commission. Mr. Schaffer admitted that he had no one in mind

except plaintiff realty company when he insisted on the clause.

The trial court found that the purpose of the 20-day listing agreement was the protection of plaintiff's right to a commission if a sale was negotiated after plaintiff revealed James Duncan as a prospective buyer. The trial court found Mr. Schaffer's testimony credible in this respect. The trial court supported its conclusion by noting that Mr. Keathley did not notify Mr. Schaffer about Erb Lumber as a prospective buyer within the 20-day period. The court also bolstered its position by finding that plaintiff had already established a method of dealing with Schaffer Lumber with respect to purchasers of the business. The court noted that a similar agreement had been entered into in 1977, and that the purpose of the previous 20-day listing was that plaintiff would disclose the name of the prospective purchaser for the business. The court held that the subsequent listing agreement of April 18, 1978, "applied only to the prospective purchaser [i.e. James Duncan] that plaintiff already had for a lumber yard business".

The trial court further held that Mr. Keathley's contacts with Erb Lumber did not rise to the level of "negotiations, offered, or dealt with" under the terms of the agreement. The court concluded that the sale of Schaffer Lumber within 12 months of the listing agreement was not attributable to plaintiff, and thus plaintiff was not entitled to the real estate commission.

Plaintiff's first argument on appeal is that the trial court relied on evidence admitted in violation of the parol evidence rule. The parol evidence rule operates to exclude evidence of prior contemporaneous agreements, whether oral or written, which contradict, vary or modify an unambiguous writing intended as a final and complete expression of

the agreement. *NAG Enterprises, Inc, v All State Industries, Inc,* 407 Mich 407, 410; 285 NW2d 770 (1979). Where a binding agreement is integrated, it supersedes inconsistent terms of prior agreements and previous negotiations to the extent that it is inconsistent with them. *Union Oil Co of California v Newton,* 397 Mich 486, 488, fn 1; 245 NW2d 11 (1976), *reh den* 398 Mich 952 (1976).

At trial, the court properly sustained objections to the introduction of testimony which would contradict the written agreement. However, in its opinion, the trial court stated:

"The specific intent and purpose of the 20 day listing period was for plaintiff's agent Keathley to give Allen Schaffer the name of his prospective buyer, one James Duncan. Duncan later turned out not to be interested in buying Schaffer's lumber yard during the 20 day period and in accordance with the past method of dealing between plaintiff and defendant, plaintiff would have had to obtain a new listing if it had a new prospective purchaser. No doubt had Keathley interested Erb Lumber Company in buying defendant's business, he would have again presented a new listing agreement and disclosed the name after defendant signed it. Defendant had a right to rely on this course of dealing and in fact, did rely on it, as is evidenced by the prior 20 day listing in July of 1977."

The trial court's ruling contradicts the unambiguous language and body of the fully integrated agreement. The contract clearly stated that plaintiff would be entitled to a commission if the property was "sold or leased within twelve (12) months after the expiration of this listing agreement to any person, corporation or its agents with whom you [plaintiff] have had negotiations, offered, or dealt with during the term hereof". Nowhere in the contract did it indicate that plaintiff was only

entitled to a commission for a sale to prospects discovered before entering the agreement. Furthermore, the contract included an integration clause stating that "there are no other representations or agreements".

The trial court also improperly utilized plaintiff's performance of the prior 1977 agreement in determining that plaintiff was only entitled to one prospect per listing agreement. A prior course of performance cannot alter the clear and unambiguous language of the contract. Where the provisions of a contract are clear and unambiguous, the contract language is to be construed according to its plain sense meaning. *Bank of the Commonwealth v Criminal Justice Institute,* 102 Mich App 239, 244; 301 NW2d 486 (1980). The trial court's finding that the parties had established a course of dealing, on the basis of one prior contract, was clearly erroneous. GCR 1963, 517.1. (Although the Uniform Commercial Code does not apply to real estate transactions, compare MCL 440.2208; MSA 19.2208 and Comment 4 thereto indicating that a single occasion of conduct does not comprise a course of performance or course of dealing.)

In addition, we note that Mr. Schaffer testified that he did not even read the agreement. He could not rely on a prior course of performance of a previous contract when he did not even read the contract in question. "One who signs a contract will not be heard to say, when enforcement is sought, that he did not read it, or that he supposed it was different in its terms." *Stark v Kent Products, Inc,* 62 Mich App 546, 548; 233 NW2d 643 (1975), *lv den* 395 Mich 779 (1975).

Thus, the trial court's ruling that the agreement was limited to one prospective purchaser (James Duncan), primarily based on evidence admitted in violation of the parol evidence rule, was erroneous.

The terms of the integrated agreement contained no such limitation.

Plaintiff further argues that the trial court's interpretation of the phrase "negotiations, offered, or dealt with" as not encompassing plaintiff's contacts with Erb Lumber during the 20-day listing period was erroneous. We agree. The listing agreement did not require that plaintiff be the procuring cause of any sale. Under the terms of the contract, plaintiff was entitled to a commission if: (1) Schaffer Lumber was sold during the 20-day listing period; or (2) plaintiff produced a ready, willing and able purchaser under the terms of the contract; or (3) if Schaffer Lumber was sold or leased within 12 months after the expiration of the listing agreement to any person, corporation or its agent with whom plaintiff had negotiated, offered or dealt with during the term of the agreement. The language of the listing agreement governs the broker's entitlement to a commission. *Craib v Presbyterian Church,* 62 Mich App 617, 622-623; 233 NW2d 674 (1975). Thus, the question is whether plaintiff negotiated, offered or dealt with Erb Lumber during the listing period, within the meaning of the contract.

Mr. Keathley testified that he contacted Erb Lumber on several occasions and spoke with Mr. Erb personally on at least two occasions during the listing period. The trial court found that these conversations merely gave Erb Lumber notice that the property was for sale and did not rise to the level of "negotiations, offered, or dealt with". However, it is clear that plaintiff called Mr. Erb and Erb Lumber on more than one occasion because he wanted to sell the property and told him on the telephone the general terms of the sale. He gave Mr. Erb an opportunity to move forward towards purchasing the property. An offer by Erb Lumber

within the listing period was not required in order to find that Mr. Keathley negotiated, offered or dealt with Erb. Neither was it necessary that Mr. Keathley cause Erb Lumber to negotiate, offer or deal with Schaffer Lumber rather than with Mr. Keathley during the 20-day listing period. Thus, we find that Mr. Keathley's discussions of the sale with Mr. Erb and Erb Lumber during the listing period constituted at least "dealing with" within the meaning of the contract. Plaintiff was entitled to a commission when the property was sold to Erb Lumber prior to the expiration of the 12-month period.

Plaintiff's additional argument that defendant should be estopped from denying plaintiff a commission was not raised at trial and was not properly preserved for appeal.

Reversed and judgment is to be entered awarding the plaintiff the commission sought.