**JOHN HARRIS & ASSOCIATES, INC., Plaintiff,**

v.

**Harvey DAY, Ph.D., d/b/a Alternative Futures Inc., and Alternative Futures Inc., Defendants.**

Civil Action No. 95–40318.

United States District Court, E.D. Michigan, Southern Division.

Jan. 31, 1996.

Michael M. Jacob, Raymond & Prokop, Southfield, MI, for defendants.

Jacqueline Raznik, Lisa Ann Robinson, Wise & Marsac, Detroit, MI, James L. Rogers, Eastman & Smith, Toledo, OH, for plaintiff.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

GADOLA, District Judge.

Plaintiff, John Harris Associates, Inc. ("JHA"), has filed this motion for partial summary judgment as to Counts I and V of its March 28, 1995 complaint and as to the counterclaims asserted by the defendant, Alternative Futures, Inc. ("AFI"), in its May 4, 1995 Answer.[1] Count I of JHA's complaint seeks damages for breach of contract in the amount of $300,852.81 plus additional "per capita" fees based on the provisions of the parties original and amended agreements. Count V requests an injunction requiring AFI to immediately disclose all information necessary to calculate the "per capita" fees

as provided in those agreements. AFI's Answer asserts claims for setoff based on theories of breach of contract, breach of fiduciary duty, and fraud in connection with a joint venture agreement. Upon review of the submissions and the relevant authorities, this court will grant plaintiff's motion for partial summary judgment.

### I. Factual Background

In 1992, John Harris, the President of JHA, was introduced to Harvey Day, the President of AFI, to discuss a business opportunity to provide a health risk appraisal program for UAW–Ford National Employee Education Development & Training Satellite Center ("UAW–Ford"). Knowing that JHA had experience in providing an array of health promotion services, including health risk appraisals, health screening and health education to employers, AFI sought to enlist JHA's services to develop a bid proposal package to be submitted to UAW–Ford. It was understood that JHA would provide its services as an independent contractor to AFI on a cost reimbursement basis only in exchange for 25% of the profits to be earned from the program with UAW–Ford.

JHA and AFI developed a proposal entitled Health Risk Appraisal (HRA–II) Program Proposal, dated April 12, 1993, which was submitted to UAW–Ford by AFI. That proposal contained the following paragraph detailing the relationship between AFI and JHA:

> AFI has established an affiliation with John Harris & Associates, Inc. (JHA), a leading firm in employee wellness program design and implementation. John Harris & Associates has had extensive experience with UAW–Ford while serving as National Consultant for the fitness center project. Our affiliation was established to combine the employee health services of AFI with the nationally recognized employee wellness services of JHA, in order to provide our customers with a more comprehensive approach to improving employee health. JHA would function as a sub-contractor to AFI on this project.

---

1. By stipulation of the parties, this court entered an order on June 6, 1995 dismissing Harvey Day,

Ph.D. without prejudice.

UAW–Ford accepted the HRA–II proposal and executed an agreement with AFI dated August 12, 1993 ("AFI–Ford Contract"). JHA was not a signatory of this agreement. Nor was it specifically mentioned in that agreement, except by reference to the HRA–II proposal. All payments for services under this agreement were to be made by UAW–Ford to AFI in accordance with specific formulas, including a per capita fee for each UAW–Ford employee receiving services, reimbursement of AFI travel expenses and monthly management fees.

AFI and JHA formalized their relationship in an agreement dated September 21, 1993 and signed October 1, 1993. Defining the parties' relationship, Article I of this agreement ("Original Agreement") states:

ARTICLE I—BUSINESS RELATIONSHIP

HARRIS shall at all times be an independent contractor and not an agent, employee or representative of AFI.

The contract also provides that JHA will be paid "as a subcontractor for all services rendered." Article III(a). Finally, the Original Contract contains a merger clause in Article VIII(f):

The Agreement sets forth the entire agreement and understanding of the parties relating to the subject matter contained herein. Any modification or amendment of this Agreement shall be in writing signed by both parties.

Under this Original Agreement, JHA agreed to make health promotion services to UAW–Ford employees including follow-up services for employees at risk. In exchange, AFI would make payments to JHA calculated in accordance with the formulas used in the AFI–Ford Contract, including a per capita fee and travel expenses. Again, JHA was not entitled to any of the payments from UAW–Ford under the AFI–Ford Contract.

AFI and JHA's contractual relationship deteriorated when AFI fell in arrears in its payments under the Original Agreement to JHA. In early 1994, John Harris and Harvey Day negotiated a payment plan for overdue monies owed by AFI to JHA. AFI issued three promissory notes to JHA, dated June 15, 1994, to evidence the debts and to maintain the contractual relationship. In exchange for these notes, JHA agreed to continue to provide services on the HRA–II Project.

Because AFI had failed to pay monies under the Original Agreement, AFI and JHA began negotiating a new contract to resolve all debts and disputes between them in September of 1994. After weeks of negotiation, Harvey Day submitted a first draft of what would ultimately become the Amended and Restated Agreement between AFI and JHA ("Amended Agreement"). Day's proposed contract referred to JHA as the "Contractor" on the HRA II Project, acknowledged the debts owed to JHA, provided that the agreement could not be modified "except in writing signed by both parties," and stated that the Amended Agreement would be the "complete agreement between the parties."

During the negotiation of the Amended Agreement, Day demanded that the Amended Agreement state that it "terminates all prior agreements and Promissory Notes existent between the parties." Day also objected to proposed language that the Original Agreement and the promissory notes "shall continue in full force and effect as specifically modified by this Agreement." Ultimately, Harris and Day agreed to replace the Original Agreement with the Amended Agreement. The relevant provisions of the Amended Agreement, signed on November 4, 1994, read:

24. The Agreement may not be modified except in writing signed by both parties.

25. The complete agreement between the parties is expressed in the Agreement and all supporting documents referred to herein.

\* \* \* \* \* \*

29. This Agreement replaces the Contract Agreement dated September 21, 1993 and certain Promissory Notes dated June 15, 1994.

Ultimately, because AFI failed to make the scheduled payments under the Amended Agreement, JHA filed its complaint on March 28, 1995, alleging five independent counts relating to AFI's failure to render

payments in accordance with the agreements. JHA now moves for summary judgment on counts I and V of that complaint. Specifically, JHA requests damages for breach of contract in the amount of $300,852.81 plus per capita fees and statutory interest under Michigan law from the date it filed its complaint, an order permitting JHA to request supplemental hearings on damages until the UAW–Ford project is complete, and an injunction requiring AFI to disclose to JHA all information necessary to calculate the per capita fee under the agreements. JHA also requests summary judgment on all claims alleged in AFI's Answer.

In support of its request for summary judgment, JHA contends that there is no dispute that AFI has failed to perform its obligations under the agreements, including its obligation to provide JHA with certain project accounting data necessary to calculate per capita fees. Moreover, JHA asserts that AFI's counterclaim for setoff is completely devoid of merit because the parties never consummated a joint venture agreement as alleged by AFI. Accordingly, JHA submits, counts I and III of AFI's counterclaims should be dismissed. Finally, JHA contends that summary judgment is appropriate as to count II of AFI's counterclaim because AFI has presented no admissible evidence to support the elements of the fraud claim asserted.

AFI responds that the Amended Agreement did not represent the entire agreement of the parties with respect to their relationship in the AFI–Ford Contract. AFI asserts that both JHA and AFI operated outside of and beyond the scope of their written agreements and their conduct and expectations clearly evidence the existence of a joint venture or "partnership" relationship. Because the agreement is not integrated, AFI concludes, material questions of fact exist concerning the scope of the agreements. Moreover, AFI contends that, because JHA and AFI were engaged in a joint venture, JHA owed and breached its duty to AFI by engaging in self-dealing, namely by marking up certain actual costs and expenses in connection with the per capita fees without prior disclosure. As such, AFI concludes, JHA is not entitled to these monies because it has breached its fiduciary duty through fraud.

## II. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citation omitted). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do

more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701 (6th Cir.1991).

### III. Discussion

■ Review of the various written agreements and the relevant authorities confirms that JHA is entitled to summary judgment on counts I and V of its March 28, 1995 complaint. AFI concedes that it was a party to the Original and Amended Agreements and that it failed to make all payments required under those agreements. These facts are sufficient to determine the question of AFI's liability under those agreements. The only issue that remains to be determined is whether parol evidence may be used by AFI to establish that JHA and AFI did not intend the November 4, 1994 Amended Agreement to define the entire scope of the parties' agreement. For the following reasons, this court finds that the Amended Agreement constitutes a fully integrated and unambiguous expression of the court's agreement.

■ Michigan courts have been clear in articulating the effect of an integration clause and parol evidence rule. As the Michigan Supreme Court explained in *Komraus Plumbing & Heating, Inc. v. Cadillac Sands Motel, Inc.*:

> Where parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that their whole engagement, and the extent and manner of the undertaking, were reduced to writing; and no evidence is permitted tending to vary or contradict its terms, or to substitute a new or different contract for it.

387 Mich. 285, 290–91, 195 N.W.2d 865 (1972). Thus, where a valid and binding agreement is integrated, it "supersedes inconsistent terms or prior agreements and previous negotiations to the extent that it is inconsistent with them." *Ditzik v. Schaffer Lumber Co.*, 139 Mich.App. 81, 88, 360 N.W.2d 876 (1984). Moreover, the clear and unambiguous language of an agreement cannot be impeached by a prior course of performance. *Id.* at 89, 360 N.W.2d 876.

■ There is no dispute that the Amended Agreement contains a merger clause stating unequivocally that the Amended Agreement is "the complete agreement between the parties." Nor is there any dispute that the first paragraph of that agreement explicitly "terminates all prior agreements and Promissory Notes existent between the parties." This court finds that these provisions unambiguously express both JHA and AFI's intent to fully integrate their Amended Agreement. Accordingly, they may not offer parol evidence to vary or contradict that Agreement.

This conclusion is bolstered by the course of the negotiations surrounding the Amended Agreement. The record discloses that Harvey Day actively participated in the negotiation process and supplied the merger language which ultimately became paragraph 25 of the agreement. Moreover, Day insisted that the Amended Agreement completely supplant the existing Original Agreement and Promissory Notes and rejected specific language proposed by JHA to preserve those prior agreements. Clearly, if Day intended to formalize the parties' relationship as a

joint venture, he could have done so at any stage of the negotiations. The simple and irrefutable fact is that he neither sought to supplement the parties' understanding of their relationship nor attempted to indicate that their written agreements were incomplete. Michigan law does not permit AFI to assert now what it failed to incorporate into its agreements. Therefore, because this court finds that the November 4, 1994 Amended Agreement is unambiguous and fully integrated, AFI may not, as a matter of law, introduce any evidence which seeks to vary or contradict the provisions of that agreement, including the evidence of conduct indicating that JHA and AFI were engaged in a joint venture.

■■■ Even if this court permitted AFI to introduce evidence indicating that a joint venture existed between JHA and AFI, its counterclaims on this issue would fail as a matter of law. AFI's evidence fails to establish that a joint venture existed under Michigan law. Michigan law defines a joint venture as "an association to carry out a single business enterprise for a profit" consisting of the following elements:

(a) an agreement indicating an intention to undertake a joint venture;

(b) a joint undertaking;

(c) a single project for profit;

(d) a sharing of profits as well as losses;

(e) contribution of skills or property by the parties;

(f) community interest and control over the subject matter of the enterprise.

*Berger v. Mead,* 127 Mich.App. 209, 214–15, 338 N.W.2d 919 (1983). The question of whether a joint venture exists is a question of law to be decided by the trial court. *Id.* at 214, 338 N.W.2d 919. The key consideration in resolving this issue is whether the parties intended a joint venture. *Id.*

■■■ Under Michigan law, it is clear that JHA and AFI were not engaged in a joint venture. Although JHA and AFI established an "affiliation" with one another for the purposes of providing a health risk appraisal program under the AFI–Ford Contract, an affiliation alone does not constitute an agreement indicating an intent to engage in a joint venture. The UAW–Ford Contract carefully characterizes JHA's role in the HRA–II program as a sub-contractor. Moreover, only AFI was a party to the UAW–Ford Contract. AFI has failed to explain how the UAW–Ford Contract expresses anything other than an intent to create an independent contractor relationship.

AFI's failure to demonstrate an intent to create a joint venture becomes even more manifest by the unambiguous provisions of the Original and Amended Agreements. Nowhere in either of these documents, which were the only written agreements addressing the nature of the parties' relationship, is there any mention of a "partnership" or joint venture.[2] To the contrary, both of these agreements specifically designate JHA as a contractor or independent contractor.

Nor are there any provisions in either agreement to substantiate the argument that a joint venture existed. AFI has not shown that AFI and JHA shared losses or profits from the HRA–II program. The language of the parties' agreements discloses that the obligations of AFI to JHA were owed under the Amended Agreement irrespective of whether AFI realized a profit or incurred losses.

AFI has also failed to present evidence demonstrating that there was any community interest or control over the subject matter of the HRA–II program. To be certain, the evidence militates against this conclusion. Harvey Day readily admits that AFI had no supervisory control over the staff of JHA and John Harris acknowledges that JHA had no control over how AFI operated the program. Clearly, the parties did not relinquish control of their operations to the other or to the HRA–II program.

---

**2.** AFI places great emphasis on a letter, dated September 2, 1994, from John Harris to Harvey Day in which Harris states that "[t]hroughout this project we tried to work with you in 'partnership.'" AFI simply attributes more signifi-cance to this term than it merits. The use of quotation marks in this statement conclusively demonstrates that the word partnership was not used or intended to express a legal relationship.

Finally, the parties did not engage in a joint undertaking. It was AFI that contracted with UAW–Ford to provide the health risk appraisal system. As discussed previously, the structure and effect of the AFI–Ford Contract was to make AFI solely responsible for the provision of a health risk appraisal system. Proof of this is found in the fact that only AFI signed the contract and only AFI received payments under that contract. It was only through the Original and Amended agreements that JHA incurred an obligation to provide any services in connection with that contract, and the nature of those services was strictly limited to the services of an independent contractor. These carefully constructed independent contractual relationships undermine any argument by AFI that JHA and AFI engaged in a joint undertaking.

AFI has failed to establish the necessary elements for a joint venture under Michigan law. Even if this court permits AFI to admit evidence contrary to the unambiguous provisions of the Amended Agreement, that evidence would not suffice to establish that a joint venture existed between AFI and JHA. Summary judgment is appropriate on counts I (breach of joint venture agreement) and III (breach of fiduciary duty in violation of joint venture agreement) of AFI's counterclaims for setoff.

Summary judgment is also appropriate on the fraud claim asserted by AFI in count II of its Answer. In that count, AFI alleges that John Harris made misrepresentations to AFI during a September 1, 1994 meeting regarding certain out-of-pocket expenses incurred by JHA and committed fraud by failing to disclose that JHA's charges included a profit margin.

■■■ To state a prima facie case of fraud or misrepresentation under Michigan law, the claimant must demonstrate:

(1) that defendant made a material representation; (2) that it was false; (3) that when he made it he knew it was false, or made it recklessly ... (4) that he made it with the intention that it should be acted upon by the plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

*Candler v. Heigho,* 208 Mich. 115, 121, 175 N.W. 141 (1919) (noting that "the absence of any one of [these elements] is fatal to a recovery."). The claimant must prove each element of fraud "by clear, satisfactory and convincing evidence." *Hi–Way Motor Co. v. International Harvester Co.,* 398 Mich. 330, 336, 247 N.W.2d 813 (1976).

■■■ Assuming that Harris made misrepresentations at the September 1, 1994 meeting, AFI fails to state a claim for fraud because it has not demonstrated that it relied, or could reasonably have relied, upon any statements relating to JHA's out-of-pocket expenses or profit margin. Harvey Day admits that he received a copy of a chart detailing JHA's expenses and profit margin over four months before JHA and AFI consummated the Amended Agreement and over two months before the alleged misrepresentations occurred on September 1, 1994. This admission undermines any claims of fraud or misrepresentation asserted by AFI in count II. Summary judgment on this count is appropriate.

### *ORDER*

Therefore, it is hereby **ORDERED** that plaintiff's motion for summary judgment as to counts I and V of the March 28, 1995 complaint and counts I through III of the defendant's counterclaims contained in its May 4, 1995 answer is **GRANTED**.

**IT IS FURTHER ORDERED** that counts I through III of defendant's May 4, 1995 answer, alleging counterclaims for breach of contract, misrepresentation and fraud, and breach of fiduciary duty, respectively, are **DISMISSED**.

**IT IS FURTHER ORDERED** that a final judgment be entered in favor of the plaintiff, John Harris & Associates Inc., and against the defendant, Alternative Futures Inc., in the amount of $300,852.81 plus per capita fees in the amount of $17,610.00 and statutory interest under Michigan law from March 28, 1995.

**IT IS FURTHER ORDERED** that defendant, Alternative Futures Inc., specifically perform its obligation under the Amended

and Restated Agreement to disclose to the plaintiff all information necessary to calculate the per capita fees for all periods subsequent to July 7, 1995.

**SO ORDERED.**