UAW-GM HUMAN RESOURCE CENTER v KSL RECREATION
CORPORATION

Docket No. 189693. Submitted June 10, 1997, at Detroit. Decided March 6,
1998, at 9:15 A.M. Leave to appeal sought.

UAW-GM Human Resource Center brought an action in the Oakland
Circuit Court against KSL Recreation Corporation and KSL Hotel
Corporation after canceling a contract for the use of the defend-
ants' hotel for a convention and unsuccessfully seeking a refund of
its down payment upon learning that the hotel had been sold and
the hotel's unionized staff had been fired and replaced with nonu-
nionzed workers. The plaintiff claimed breach of contract, conver-
sion, and fraud, alleging that, despite a letter of agreement that did
not state that the hotel staff had to be unionized and a merger or
integration clause providing that the agreement constituted a
merger of all proposals, negotiations, and representations, there
was an independent, collateral promise to provide the plaintiff with
a unionized hotel. The defendants filed a counterclaim for enforce-
ment of the liquidated damages provision of the letter of agree-
ment. On cross-motions for summary disposition, the court, Jessica
R. Cooper, J., granted the plaintiff's motion, finding parol evidence
of a separate agreement requiring that the hotel employees be
unionized. The defendants appealed.

The Court of Appeals *held*:

1. The trial court erred in granting the plaintiff's motion for sum-
mary disposition and denying the defendants' motion for summary
disposition. Except in cases of fraud that invalidates an integration
clause itself, or where the contract is obviously incomplete on its
face, neither of which being the case here, an integration clause is
conclusive and parol evidence is not admissible to show that the
contract is not integrated.

2. The trial court erred in ruling that the liquidated damages pro-
vision of the letter of agreement was invalid. A liquidated damages
provision must be sustained by the courts if, as in this case, the
amount is reasonable with relation to the possible injury suffered
and not unconscionable or excessive. The matter must be
remanded for a determination of damages awardable to the defend-
ants pursuant to the liquidated damages provision.

Reversed and remanded.

HOLBROOK, JR., J., dissenting, stated that an examination of a written contract alone is insufficient to determine its completeness and extrinsic evidence that is neither flimsy nor implausible is admissible to establish whether a writing was in fact intended by the parties as a completely integrated contract. The circumstances surrounding the execution of the contract in this case and the material change that occurred when the hotel was sold and the unionized hotel staff was replaced with nonunionized workers establish as a matter of law that the plaintiff had not assented to a completely integrated agreement. The trial court's order granting summary disposition to plaintiff should be affirmed.

1. CONTRACTS — INTEGRATION CLAUSES — PAROL EVIDENCE.

An integration clause of a written contract generally is conclusive such that parol evidence is not admissible to show that an agreement is not integrated; exceptions exist where fraud invalidates the integration clause itself, or where the contract is obviously incomplete on its face.

2. CONTRACTS — INTEGRATION CLAUSES — FRAUD — PAROL EVIDENCE.

Fraud, in order to invalidate an integration clause in a written contract, must be one by which one party by artifice or concealment induces the other to reasonably suppose that an antecedent agreement is included in the writing, or to forget that agreement and to execute an incomplete writing, while describing it as complete.

3. CONTRACTS — LIQUIDATED DAMAGES.

Whether a liquidated damages provision is valid and enforceable or invalid as a penalty is a question of law; courts must sustain such a provision if the amount is reasonable with relation to the possible injury suffered and not unconscionable or excessive.

*Butzel Long* (by *Bruce L. Sendek*), for the plaintiff.

*Kerr, Russell and Weber, P.L.C.* (by *James E. DeLine*), for the defendants.

Before: MARKMAN, P.J., and HOLBROOK, JR., and O'CONNELL, JJ.

MARKMAN, P.J. Defendants appeal as of right a trial court order granting summary disposition to plaintiff on its claims of breach of contract, conversion, and

fraud. Defendants also appeal as of right the trial court's denial of their motion for summary disposition. We reverse and remand for determination of damages pursuant to the liquidated damages formula set forth in the contract.

FACTS

In December 1993, plaintiff entered into a contract with Carol Management Corporation (CMC) for the use of its property, Doral Resort and Country Club, for a convention scheduled in October 1994. The "letter of agreement" included a merger clause that stated that such agreement constituted "a merger of all proposals, negotiations and representations with reference to the subject matter and provisions." The letter of agreement did not contain any provision requiring that Doral Resort employees be union-represented. However, plaintiff contends in its appellate brief that it signed the letter of agreement in reliance on an "independent, collateral promise to provide [plaintiff] with a union-represented hotel." Plaintiff provided the affidavits of Herschel Nix, plaintiff's agent, and Barbara Roush, CMC's agent, who negotiated the contract. In his affidavit, Nix states that during the contract negotiation he and Roush discussed plaintiff's requirement that the hotel employees be union-represented and that Roush agreed to this requirement. In her affidavit, Roush states that "prior to and at the time" the contract at issue was negotiated she "was well aware" of plaintiff's requirement that the hotel employees be union-represented and that "that there is no doubt that I agreed on behalf of the Doral Resort to provide

a union hotel."[1] The letter of agreement also included a liquidated damages clause in the event plaintiff canceled the reservation "for any reason other than the following: Acts of God, Government Regulation, Disaster, Civil Disorders or other emergencies making it illegal to hold the meeting/convention."

Later in December 1993, the hotel was sold to defendants, who subsequently replaced the resort's union employees with a nonunionized work force.[2] In June 1994, when plaintiff learned that the hotel no longer had union employees, it canceled the contract and demanded a refund of its down payment. Defendants refused to refund the down payment, retaining it as a portion of the liquidated damages allegedly owed to them pursuant to the contract. Plaintiff filed suit for return of the down payment and asserted claims of breach of contract, conversion of the deposit, and fraud. Defendants filed a counterclaim and moved for summary disposition and enforcement of the liquidated damages clause. Plaintiff filed a cross-motion

---

[1] Roush's affidavit is ambiguous regarding whether, in negotiating the December 1993 letter of agreement, she explicitly agreed to this requirement pursuant to specific discussion of this issue or she impliedly agreed to this requirement pursuant to previous knowledge of it. We also note that Roush may have a bias against defendants because they fired all the union employees, including Roush, after the hotel was purchased. These factual issues might have made summary disposition for either party inappropriate under MCR 2.116(C)(10). However, our resolution of this matter turns on our conclusion that the express merger clause precludes consideration of parol evidence regarding integration here; accordingly we need not resolve any factual issues regarding the assertions in Roush's affidavit.

[2] Federal labor law recognizes the right of a successor employer to avoid its predecessor's obligations under a collective bargaining agreement by choosing not to retain the predecessor's work force, *NLRB v Burns Int'l Security Services*, 406 US 272, 288-291; 92 S Ct 1571; 32 L Ed 2d 61 (1972), provided that hiring decisions are not a product of union affiliation, *Id.* at 280, n 5.

for summary disposition. The trial court granted plaintiff's motion for summary disposition regarding the breach of contract count on the basis of its determination that there was a separate agreement requiring that the hotel employees be union-represented. It also granted plaintiff's motion for summary disposition on the conversion and fraud counts.

This Court reviews decisions on motions for summary disposition de novo to determine if the moving party was entitled to judgment as a matter of law. *Stehlik v Johnson (On Rehearing)*, 206 Mich App 83, 85; 520 NW2d 633 (1994).

> MCR 2.116(C)(8) permits summary disposition when the opposing party has failed to state a claim upon which relief can be granted. A motion under this subsection determines whether the opposing party's pleadings allege a prima facie case. The court must accept as true all well-pleaded facts. Only if the allegations fail to state a legal claim is summary disposition pursuant to MCR 2.116(C)(8) valid. . . . MCR 2.116(C)(10) permits summary disposition when, except for the amount of damages, there is no genuine issue concerning any material fact and the moving party is entitled to [judgment] as a matter of law. A court reviewing such a motion must consider the pleadings, affidavits, depositions, admissions, and any other evidence in favor of the opposing party and grant the benefit of any reasonable doubt to the opposing party. [*Id.*]

## MERGER CLAUSE

Defendants claim that the trial court erred in granting plaintiff's motion for summary disposition and in denying defendants' motion for summary disposition. Regarding the breach of contract count, they specifically contend that parol evidence of a separate agreement providing that the hotel would have union

employees at the time of the convention was inadmissible because the letter of agreement included an express merger clause.

We begin by reiterating the basic rules regarding contract interpretation. "The primary goal in the construction or interpretation of any contract is to honor the intent of the parties." *Rasheed v Chrysler Corp*, 445 Mich 109, 127, n 28; 517 NW2d 19 (1994).

"We must look for the intent of the parties in the words used in the instrument. This court does not have the right to make a different contract for the parties or to look to extrinsic testimony to determine their intent when the words used by them are clear and unambiguous and have a definite meaning." [*Sheldon-Seatz, Inc v Coles*, 319 Mich 401, 406-407; 29 NW2d 832 (1947), quoting *Michigan Chandelier Co v Morse*, 297 Mich 41, 49; 297 NW 64 (1941).]

In *Port Huron Ed Ass'n v Port Huron Area School Dist*, 452 Mich 309, 323; 550 NW2d 228 (1996), the Court stated:

The initial question whether contract language is ambiguous is a question of law. If the contract language is clear and unambiguous, its meaning is a question of law. Where the contract language is unclear or susceptible to multiple meanings, interpretation becomes a question of fact. [Citations omitted.]

A contract is ambiguous if "its words may reasonably be understood in different ways." *Raska v Farm Bureau Ins Co*, 412 Mich 355, 362; 314 NW2d 440 (1982). Courts are not to create ambiguity where none exists. *Smith v Physicians Health Plan, Inc*, 444 Mich 743, 759; 514 NW2d 150 (1994). "Contractual language is construed according to its plain and ordinary meaning, and technical or constrained con-

structions are to be avoided." *Dillon v DeNooyer Chevrolet Geo*, 217 Mich App 163, 166; 550 NW2d 846 (1996). If the meaning of an agreement is ambiguous or unclear, the trier of fact is to determine the intent of the parties. *Chrysler Corp v Brencal Contractors, Inc*, 146 Mich App 766, 775; 381 NW2d 814 (1985).

The parol evidence rule may be summarized as follows: "[p]arol evidence of contract negotiations, or of prior or contemporaneous agreements that contradict or vary the written contract, is not admissible to vary the terms of a contract which is clear and unambiguous." *Schmude Oil Co v Omar Operating Co*, 184 Mich App 574, 580; 458 NW2d 659 (1990). This rule recognizes that in "[b]ack of nearly every written instrument lies a parol agreement, merged therein." *Lee State Bank v McElheny*, 227 Mich 322, 327; 198 NW 928 (1924). "The practical justification for the rule lies in the stability that it gives to written contracts; for otherwise either party might avoid his obligation by testifying that a contemporaneous oral agreement released him from the duties that he had simultaneously assumed in writing." 4 Williston, Contracts, § 631. In other words, the parol evidence rule addresses the fact that "disappointed parties will have a great incentive to describe circumstances in ways that escape the explicit terms of their contracts." Fried, *Contract as Promise* (Cambridge: Harvard University Press, 1981) at 60.

However, parol evidence of prior or contemporaneous agreements or negotiations is admissible on the threshold question whether a written contract is an integrated instrument that is a complete expression of the parties' agreement. *In re Skotzke Estate*, 216 Mich App 247, 251-252; 548 NW2d 695 (1996); *NAG Enter-*

*prises, Inc v All State Industries, Inc,* 407 Mich 407, 410-411; 285 NW2d 770 (1979). The *NAG* Court noted four exceptions to the parol evidence rule, stating that extrinsic evidence is admissible to show (1) that the writing was a sham, not intended to create legal relations, (2) that the contract has no efficacy or effect because of fraud, illegality, or mistake, (3) that the parties did not integrate their agreement or assent to it as the final embodiment of their understanding, or (4) that the agreement was only partially integrated because essential elements were not reduced to writing. *NAG, supra* at 410-411. See also 4 Williston, Contracts, § 631. Importantly, neither *NAG* nor *Skotzke* involved a contract with an explicit integration clause.

The first issue before us is whether parol evidence is admissible with regard to the threshold question of integration even when the written agreement includes an explicit merger or integration clause. In other words, the issue is whether *NAG* applies to allow parol evidence regarding this threshold issue when a contract includes an explicit merger clause. While this issue is one of first impression, its answer turns on well-established principles of contract law. Williston on Contracts and Corbin on Contracts offer specific guidance regarding this issue. 4 Williston, Contracts, § 633, p 1014  states in pertinent part:

> Since it is only the intention of the parties to adopt a writing as a memorial which makes that writing an integration of the contract, and makes the parol evidence rule applicable, any expression of their intention in the writing in regard to the matter will be given effect. If they provide in terms that the writing shall be a complete integration of their agreement . . . the expressed intention will be effectuated.

3 Corbin, Contracts, § 578, pp 402-411 states in pertinent part:

> If a written document, mutually assented to, declares in express terms that it contains the entire agreement of the parties . . . this declaration is conclusive as long as it has itself not been set aside by a court on grounds of fraud or mistake, or on some ground that is sufficient for setting aside other contracts. . . . It is just like a general release of all antecedent claims.
>
> \*     \*     \*
>
> . . . An agreement that we do now discharge and nullify all previous agreements and warranties is effective, so long as it is not itself avoided. . . .
>
> \*     \*     \*
>
> . . . By limiting the contract to the provisions that are in writing, the parties are definitely expressing an intention to nullify antecedent understandings or agreements. They are making the document a complete integration. Therefore, even if there had in fact been an antecedent warranty or other provision, it is discharged by the written agreement.

Thus, both Corbin and Williston indicate that an explicit integration clause is conclusive and that parol evidence is not admissible to determine whether a contract is integrated when a written contract contains such a clause.[3] In the context of an explicit integration clause, Corbin recognizes exceptions to the

---

[3] The dissenting opinion concludes that extrinsic evidence is admissible to determine if a contract is integrated, even when the contract includes a valid merger clause. The dissenting opinion cites 3 Corbin, Contracts, § 582. This section primarily addresses contracts that do not include an explicit integration clause. References in this section to contracts containing an integration clause involve the admissibility of parol evidence to demonstrate the invalidity of an integration clause, e.g., on the basis of fraud.

barring of parol evidence only for fraud (or other grounds sufficient to set aside a contract) and for the rare situation when the written document is obviously incomplete "on its face" and, therefore, parol evidence is necessary "for the filling of gaps." *Id.* The conclusion that parol evidence is not admissible to show that a written agreement is not integrated when the agreement itself includes an integration clause is consistent with the general contract principles of honoring parties' agreements as expressed in their written contracts and not creating ambiguities where none exist.[4] See *Rasheed, supra* at 127, n 28; *Sheldon-Seatz, supra* at 406-407; *Smith, supra* at 759. This conclusion accords respect to the rules that the parties themselves have set forth to resolve controversies arising under the contract. The parties are bound by the contract because they have chosen to be so bound.

Further, and most fundamentally, if parol evidence were admissible with regard to the threshold issue whether the written agreement was integrated despite the existence of an integration clause, there would be little distinction between contracts that include an integration clause and those that do not. When the parties choose to include an integration clause, they clearly indicate that the written agreement is integrated; accordingly, there is no longer any "threshold

---

[4] This is the only rule that treats the parties to the contract as consenting adults who are able to establish their own rules for the resolution of future controversies between themselves. The dissenting opinion fails to respect the parties' clearly expressed intent to be bound only by the terms of the letter of agreement. While the dissenting opinion attempts to minimize the import of the merger clause, the merger clause is an explicit term of the parties' contract and therefore an expression of their intent to which this Court is obligated to give meaning.

issue" whether the agreement is integrated and, correspondingly, no need to resort to parol evidence to resolve this issue.[5] Thus *NAG*, which allows resort to parol evidence to resolve this "threshold issue," does not control when a contract includes a valid merger clause. 3 Corbin, Contracts, § 577, p 401   states in pertinent part:

> A finding that the parties had assented to a writing as the complete integration of their then existing agreement is necessarily a finding that there is no simultaneous oral addition. On such a finding of fact, we are no longer required to decide whether proof of simultaneous oral agreement is admissible, for we have just found that there was no such oral agreement.

The conclusion that parol evidence is not admissible regarding this "threshold issue" when there is an

---

[5] The increased use of explicit integration clauses appears to be a response to the growing number of exceptions that have arisen in modern contract law to the traditional rule that courts will not look beyond the language of the contract itself in order to interpret the contract. Plaintiff now proposes to embark upon the same course by creating exceptions even to contracts that contain explicit integration clauses. We do not agree with plaintiff's contention during oral argument that there is no effective means by which parties to a contract can preclude courts from looking beyond the four corners of a contract in interpreting such contract. Were we to accept plaintiff's contention, as the dissenting opinion does, the likely response by members of the bar would be increasingly explicit merger clauses designed to compel the judiciary to respect the parties' decision to be bound only by the terms of the written agreement. Such "super-merger" clauses should not be necessary, but clear merger provisions of the sort contained in the instant contract are apparently insufficient to convince some that the parties mean what they say when they agree to a contract that includes an integration clause. Would it have made any difference if the parties had included language in the contract to the effect that the merger clause here "means what it says" or that the clause was "consciously" included in the agreement or that "it is not intended to be mere boilerplate"? What can parties to a contract do to ensure that they are held *only* to the terms explicitly agreed to in a written agreement?

explicit integration clause honors the parties' decision to include such a clause in their written agreement. It gives effect to their decision to establish a written agreement as the exclusive basis for determining their intentions concerning the subject matter of the contract.

This rule is especially compelling in cases such as the present one, where defendants, successor corporations, assumed performance of another corporation's obligations under a letter of agreement. Because defendants were not parties to the negotiations resulting in the letter of agreement, they would obviously be unaware of any oral representations made by CMC's agent to plaintiff's agent in the course of those negotiations. Defendants assumed CMC's obligations under the letter of agreement, which included an explicit merger clause. Defendants could not reasonably have been expected to discuss with every party to every contract with CMC whether any parol agreements existed that would place further burdens upon defendants in the context of a contract with an explicit merger clause. Under these circumstances, it would be fundamentally unfair to hold defendants to oral representations allegedly made by CMC's agent. Of the participants involved in this controversy, defendants are clearly the least blameworthy and the least able to protect themselves. Unlike plaintiff, which could have addressed its concerns by including appropriate language in the contract, and unlike CMC, which allegedly agreed to carry out obligations not included within the contract, defendants did nothing more than rely upon the express language of the instant contract, to wit, that the letter of agreement represented the full understanding between plaintiff

and CMC. We believe that defendants acted reasonably in their reliance and that the contract should be interpreted in accordance with its express provisions.

We find little Michigan authority discussing the parol evidence rule in the context of contracts that include integration clauses.[6] In *McCray Refrigerator & Cold Storage Co v Woods & Zent*, 99 Mich 269, 271-272; 58 NW 320 (1894), the Court stated that where a written agreement (that included an integration clause) was silent regarding the subject of warranty, a warranty could not be proved by parol evidence. In *In re Backofen Estate*, 157 Mich App 795, 800; 404 NW2d 675 (1987), this Court found that the parol evidence rule did not bar testimony regarding the circumstances under which a loan transaction occurred because the contract terms were not in dispute and the contract did not contain an integration clause that would have invoked the parol evidence rule. In *Ditzik v Schaffer Lumber Co*, 139 Mich App 81, 88-89; 360 NW2d 876 (1984), this Court held that the trial court erroneously admitted extrinsic evidence of a course of conduct because it contradicted "the unambiguous language and body of the fully integrated agreement" and specifically noted that the written agreement included an integration clause. These three cases indicate that an integration clause precludes admission of parol evidence that contradicts the written agreement. None of them specifically addresses the issue whether extrinsic evidence is admissible to demonstrate that a written agreement is not integrated

---

[6] Neither of the cases cited by the dissenting opinion with respect to this issue (*Brady v Central Excavators, Inc*, 316 Mich 594; 25 NW2d 630 [1947] and *In re Frost Estate*, 130 Mich App 556; 344 NW2d 331 [1983]) involved contracts with integration clauses.

despite an explicit integration clause. However, evidence of any prior or contemporaneous parol agreements would clearly contradict the integration clause itself in a written agreement because an integration clause nullifies all antecedent agreements. 3 Corbin, Contracts, § 578.

We are aware of two Michigan decisions suggesting that parol evidence may, under some circumstances, be admissible to vary the terms of a written agreement despite the existence of an integration clause, *Central Transport, Inc v Fruehauf Corp*, 139 Mich App 536; 362 NW2d 823 (1984), and *Van Pembrook v Zero Mfg Co*, 146 Mich App 87, 98; 380 NW2d 60 (1985). We have reviewed these decisions with great interest because they seem to be contrary to Corbin, Williston, and the Supreme Court's statements regarding the matter. With respect to *Fruehauf*, we conclude that while the decision does contain some rather opaque language, it is consistent with the rule set forth above. With respect to *Van Pembrook*, we conclude that it suggests that parol evidence may be used to vary the terms of a written agreement despite the existence of an integration clause, and we accordingly decline to follow *Van Pembrook*.

In *Fruehauf*, at issue were several lease agreements containing integration clauses. The plaintiff contended that, before or contemporaneously with the execution of the leases, the defendant orally agreed to transfer the subject matter of the leases to the plaintiff for a nominal fee at the end of the lease term. In other words, the plaintiff argued that the agreements were essentially "lease-purchase" or, more colloquially, "rent-to-own," agreements, with the lease components set forth in writing and the

purchase components agreed to orally. The leases themselves reflected no purchase component, each being a fairly straightforward lease and stating simply that "[t]his instrument contains the entire agreement between the parties pertaining to the subject matter hereof." The defendant maintained that no agreements beyond those set forth in the leases had ever been entered into, and, further, argued that in light of the integration clauses in the leases, no parol evidence could properly be heard regarding the plaintiff's contention. The *Fruehauf* Court cited *NAG* and noted that the trial court in *Fruehauf* considered evidence beyond the explicit integration clause in the agreements in determining that the written agreements were integrated. Plaintiff interprets *Fruehauf* as tacitly approving the consideration of parol evidence regarding integration despite the existence of an explicit integration clause. However, *Fruehauf* did not affirmatively address the issue whether extrinsic evidence was admissible to demonstrate that a contract was not fully integrated in the face of an explicit integration clause. Rather, it observed, in response to the plaintiff's arguments to the contrary, that the trial court had looked to extrinsic evidence, in addition to the integration clause, to determine whether the agreement was integrated; but it did not specifically approve this use of parol evidence by the trial court. Such an analysis by the trial court, when it ultimately upheld the integration clause, constitutes at worst a needless exercise. The *Fruehauf* Court said nothing to affirm the propriety of looking to extrinsic evidence in the face of an express integration clause, much less anything to compel such an analysis.

In *Van Pembrook*, the plaintiff agreed to become a sales representative for the defendant, and entered into a written agreement to this effect that contained a merger clause. Later, the plaintiff brought suit, alleging that the defendant had breached the contract. The defendant failed to properly defend the action, and a default judgment was entered. The defendant then made various arguments attacking the trial court's failure to set aside the default judgment and, in the alternative, challenged the amount of damages awarded. In the context of determining the amount of damages, the trial court relied on testimony of the plaintiff in which he stated that the defendant had represented that he would earn "net profits of $10,000 to $15,000 a year." *Van Pembrook, supra* at 97. Because no such guarantee was included in the written agreement, the defendant contended that the court could not properly consider the plaintiff's testimony with regard to this issue.

The *Van Pembrook* Court relied on *Stimac v Wissman*, 342 Mich 20, 25-26; 69 NW2d 151 (1955), for the propositions that the parol evidence rule does not preclude evidence of a prior or contemporaneous parol agreement that "does not interfere with the terms of the written contract" and that evidence of a collateral agreement is admissible where such agreement was an inducement for entering into the contract. However, this reliance was misplaced because *Stimac* addressed written contracts that were not fully integrated while *Van Pembrook* involved a contract with a merger clause. The *Van Pembrook* Court held that extrinsic evidence, demonstrating that the defendant's representative made false representations upon which the plaintiff relied to his detriment, was

admissible because it was not used to vary the terms of the written contract but to show the circumstances under which the parties entered into it. *Van Pembrook, supra* at 98. Parol evidence generally may be considered to determine whether fraud occurred under the second exception to the parol evidence rule discussed in *NAG, supra* at 410-411. However, a contract with a merger clause nullifies all antecedent claims. See 3 Corbin, Contracts, § 578. In our view, this includes any collateral agreements that were allegedly an inducement for entering into the contract. In the context of a contract that included a merger clause, parol evidence regarding false representations in a collateral agreement that induced the plaintiff to enter into the contract would vary the terms of the contract. The *Van Pembrook* Court, in our judgment, erred in finding otherwise. Its decision failed to discuss or accord any meaning to the merger clause that the parties freely chose to include in their contract. Accordingly, we believe that *Van Pembrook* was wrongly decided.

For these reasons, we hold that when the parties include an integration clause in their written contract, it is conclusive and parol evidence is not admissible to show that the agreement is not integrated except in cases of fraud that invalidate the integration clause or where an agreement is obviously incomplete "on its face" and, therefore, parol evidence is necessary for the "filling of gaps." 3 Corbin, Contracts, § 578, p 411.

### FRAUD

Because plaintiff made fraud allegations here, we will consider the effect of such allegations on a con-

tract with a merger clause. "Fraud . . . makes a contract voidable at the instance of the innocent party." 3 Corbin, Contracts, § 580, p 431; see also *NAG, supra* at 410-411. Parol evidence is generally admissible to demonstrate fraud. 3 Corbin, Contracts, § 580; *NAG, supra* at 410-411. However, in the context of an integration clause, which releases all antecedent claims, only certain types of fraud would vitiate the contract. 3 Corbin, Contracts, § 578, p 411, states in part:

> To establish fraud, it is not sufficient merely to show that the writing states that there was no antecedent agreement when the fact is that there had been one. If by artifice or concealment, one party induces the other to suppose that the antecedent agreement is included in the writing, or to forget that agreement and to execute an incomplete writing, while describing it as complete, the written provision may be voidable on the ground of fraud.

In other words, while parol evidence is generally admissible to prove fraud, fraud that relates solely to an oral agreement that was nullified by a valid merger clause would have no effect on the validity of the contract. Thus, when a contract contains a valid merger clause, the only fraud that could vitiate the contract is fraud that would invalidate the merger clause itself, i.e., fraud relating to the merger clause or fraud that invalidates the entire contract including the merger clause. 3 Corbin, Contracts, § 578.[7]

---

[7] The language from § 578 "excerpted out" of this quotation, according to the dissent, has been "excerpted out" because it is altogether irrelevant to the issue presented in this case. Such language relates only to whether there has been a written contract in the first instance. Neither party here denies that there is a valid contract; rather, they disagree only with respect to the particular terms of the contract.

Here, defendants contended that the contract was fully integrated and presented the letter of agreement with its express and unambiguous merger clause as evidence. Plaintiff presented the affidavits of Nix and Roush in support of its argument that the letter of agreement was not fully integrated because the alleged agreement providing that the hotel would have union employees at the time of the convention was not reduced to writing. In its fraud count, plaintiff contends that Roush's representations that the hotel would have union employees and her failure to inform plaintiff of the impending sale of the hotel constituted fraud.[8] These fraud claims turn on an alleged agreement that the hotel employees would be union-represented. However, the merger clause would nullify any such agreement not included in the letter of agreement. The various species of fraud alleged here all require reliance on a misrepresentation. See *Mitchell v Dahlberg*, 215 Mich App 718, 723; 547 NW2d 74 (1996) (fraud); *McMullen v Joldersma*, 174 Mich App 207, 213; 435 NW2d 428 (1988) (silent fraud); *United States Fidelity & Guaranty Co v Black*, 412 Mich 99, 116; 313 NW2d 77 (1981) (innocent misrepresentation). Here, the merger clause made it unreasonable for plaintiff's agent to rely on any representations not included in the letter of agreement. Any injury suffered by plaintiff appears to have resulted from its agent's failure to include a requirement that hotel employees be union-represented in the integrated letter of agreement rather than from reliance on any misrepresentations

---

[8] Because Roush is unconnected with defendants, it would seem that plaintiff would more appropriately pursue its fraud claims against Roush or CMC.

by Roush. Thus, the allegations in plaintiff's fraud count are not the type of fraud claims that could invalidate a contract with a valid merger clause.[9]

Plaintiff made no allegations of fraud that would invalidate the contract or the merger clause itself. Nix, plaintiff's agent, had over seven years' experience in negotiating contracts for such conventions as demonstrated by his own affidavit. There is no allegation that he was defrauded regarding the integration clause or defrauded into believing that the written contract included a provision requiring the hotel to use union-represented employees when it did not. In his affidavit, he states that in a 1991 letter of agreement with the same hotel, provisions were made for the hotel to provide bus transportation with union drivers. This evidence demonstrates that the plaintiff's agent knew how to include agreements regarding the union status of employees in a written contract, had done so in the past when negotiating with CMC, and yet apparently decided not to include any such agreement here. In light of the obvious impor-

---

[9] Although not necessary to our analysis, we additionally note that plaintiff's allegations fail to meet the elements of fraud as set forth in *Mitchell, supra* at 723, or silent fraud as set forth in *McMullen, supra* at 213. Here, plaintiff offered no documentary evidence to indicate that, at the time she allegedly represented that the hotel employees would be union-represented, Roush knew that defendants intended to eliminate the union work force, Roush knew that the possible sale of the hotel to defendants would be significant to the contract negotiations or that she had a duty to disclose the fact that negotiations for the sale of the hotel were under way. According to defendants' answer to the complaint, they purchased the hotel on or about December 30, 1993; thus, they purchased the hotel after the letter of agreement at issue was signed. Plaintiff's belated claim for innocent misrepresentation would have similarly failed because plaintiff failed to demonstrate that Roush had any duty to disclose the impending sale that would make a failure to disclose this information a representation that was false in fact. See *United States Fidelity, supra* at 116.

tance of this issue to plaintiff, it is difficult to understand why an agreement regarding the union status of employees was not included in the same way in the instant agreement.[10] Instead, the letter of agreement contained no such provision and included a clear integration clause.[11] The written agreement is detailed and complete on its face, see 3 Corbin, Contracts, § 578,[12] and its words are unambiguous, see *Raska*,

[10] We do not dispute that plaintiff was sincerely committed to patronizing hotels with union-represented employees; that defendants were or should have been aware that plaintiff, associated with a prominent labor union, preferred to frequent hotels with union-represented employees; or that such a requirement could be considered "common knowledge." But such "common knowledge" does not justify ignoring the unambiguous terms of the parties' written contract. A rule allowing the use of such "common knowledge" to vary the terms of a written contract would improperly place the courts in the position of routinely rewriting contracts instead of honoring the parties' intentions as actually expressed in the contract. It would also require that we interpret contracts involving parties whose positions and interests are well known differently than contracts involving parties whose positions and interests are less well known. For example, plaintiff's interest (unexpressed in the contract) in holding its meetings at a unionized facility should not be accorded greater weight than another plaintiff's less recognized yet equally sincere interest in holding its meetings at a facility eschewing alcoholic beverages when it fails to set forth such a requirement in the contract. Further, such a "common knowledge" argument could virtually always be made by a party attempting to alter the terms of a written contract. Where a party to a contract has a specific requirement, e.g., a political organization desiring not to hold a convention at a facility whose owners have contributed to a rival political organization; an anti-smoking organization desiring to avoid a facility allowing smoking, it is up to that party to include such a requirement in a contract in order to bind the other party.

[11] Although not necessary to our analysis, we note that the letter of agreement expressly set forth reasons justifying cancellation, i.e., "Acts of God, Government Regulation, Disaster, Civil Disorders or other emergencies making it illegal to hold the meeting/convention." These reasons did not include failure to maintain a union-represented staff. This cancellation clause would have been the logical place to provide for termination of the contract if the hotel employees did not continue to be union-represented.

[12] This exception applies when a contract with a merger clause fails to specify obvious elements of the deal struck. For example, under the letter of agreement at issue, if the hotel were to provide rooms without furniture or running water, this Court could fill the gaps in the letter of agree-

*supra* at 362; *Smith, supra* at 759. There is no indication that the integration clause itself is void for any reason. Accordingly, as a matter of law, parol evidence was not admissible here to contradict the explicit integration clause.[13] Therefore, we hold that the trial court erred in granting plaintiff's motion for summary disposition and equally erred in denying defendants' motion for summary disposition.[14]

---

ment by recognizing that such minimal amenities are essential to what constitutes a hotel room. But union-represented hotel employees are not essential to providing a hotel room. Rather, it is a particular desire of plaintiff, not common to all hotel patrons, that it use only hotels with union-represented employees. Unlike a failure to specify obvious elements of a contract, a party's failure to specify particular requests it may have will not make a contract with a merger clause "obviously incomplete on its face" such that parol evidence may be used "for the filling of gaps." A broad interpretation of this exception would largely vitiate the purpose of a merger clause, as well as create two categories of contracting parties— one category whose unwritten requirements are respected because they are well-known because of the parties' prominence and another category whose unwritten requirements are not respected because they are less well known. See n. 10, *supra*, also.

[13] Here, the merger clause, which was not void for fraud and not part of a contract that was incomplete on its face, dispositively answers the question whether the letter of agreement was integrated. Accordingly, here, there is no longer a threshold question whether the letter of agreement is integrated. The dissenting opinion cites Corbin, §§ 582 and 583 for the proposition that parol evidence is admissible to make the threshold determination whether a contract is completely integrated. However, Corbin, § 578 clearly states that a merger clause that is neither void itself nor part of a contract that is "obviously incomplete on its face" is conclusive. It is unclear whether there is anything that consenting parties can do in Michigan, pursuant to the theory of the dissenting opinion, to ensure that their future contract disputes will be resolved exclusively through resort to the language of their agreements.

[14] To construe the integration clause as precluding summary disposition for plaintiff, but not also as requiring summary disposition for defendants, is to accept the premise that the integration clause does not mean what it says. Contrary to plaintiff's contention during oral argument, we believe that the parties to a contract can agree to an integration clause that will effectively preclude courts from looking outside the contract to interpret the contract. The raison d'etre of an integration clause is to prohibit consideration of parol evidence by nullifying agreements not included in the written agreement. See 3 Corbin, Contracts, § 578. To consider parol evi-

LIQUIDATED DAMAGES

Defendants also argue that the trial court should have awarded liquidated damages to them pursuant to the contract. Although the court granted summary disposition to plaintiff, it further indicated that liquidated damages "would be inappropriate." A liquidated damages provision is simply an agreement by the parties fixing the amount of damages in case of a breach. *Papo v Aglo Restaurants of San Jose, Inc*, 149 Mich App 285, 294; 386 NW2d 177 (1986). Whether such a provision is valid and enforceable or invalid as a penalty is a question of law. *Moore v St Clair Co*, 120 Mich App 335, 339; 328 NW2d 47 (1982). The courts are to sustain such provisions if the amount is "reasonable with relation to the possible injury suffered" and not "unconscionable or excessive." *Id.* at 340, citing *Curran v Williams*, 352 Mich 278, 282; 89 NW2d 602 (1958). Here, the liquidated damages clause fixed the amount of damages at sixty-five percent of the "total room, food and beverage revenue for the entire stay" for a cancellation 90-180 days before the sched-

dence in interpreting a written contract that includes an integration clause is to accord the integration clause no meaning. An integration clause is not merely an additional "factor" to be weighed in light of the affidavits and other extrinsic evidence to determine the parties' understandings, nor is it merely one more piece of evidence to be used to determine whether there is a "genuine issue of material fact" to be evaluated at trial. Rather, an integration clause, if construed as precluding summary disposition for plaintiff, does so because it establishes an internal rule of construction for the contract explicitly agreed to by the parties to the contract. Specifically, an integration clause is an internal rule of construction that any previous or contemporaneous agreements are nullified. The parties' choice to include such an internal rule of construction precludes consideration of any prior or contemporaneous agreements and compels summary disposition here for defendants.

uled event.[15] This provision also included a promise by defendants to mitigate damages by "mak[ing] every effort to" rerent the facilities. This formula, negotiated by the parties, appears reasonable in relation to defendants' potential injury if plaintiff canceled and thus does not appear to be an invalid penalty. Accordingly, the trial court erred in ruling that it was an invalid liquidated damages provision. We therefore remand for a determination of liquidated damages due under the liquidated damages provision of the letter of agreement.

Finally, we will briefly respond to the dissenting opinion. The dissenting opinion indicates in n 3, *post* at 517, that no contract existed between plaintiff and defendants. Initially, we note that the parties themselves, unlike the dissent, have not suggested that no contract existed between plaintiff and defendants. In fact, the parties clearly assume that the letter of agreement is binding on them; they only disagree regarding its meaning and the effect of the alleged oral representations regarding union representation of the staff. While this Court may, of course, address essential issues not raised by the parties, we are perplexed by the dissent's reliance upon an argument that is *inconsistent* with the parties' positions to dispose of this matter.

Restatement Contracts, 2d, § 318, p 19, states that "[a]n obligor can properly delegate the performance of his duty to another unless the delegation is con-

---

[15] The previous paragraph of the letter of agreement requires an advance deposit of "$73,260.00 which is an estimated 50% of the total bill." Whether this estimate is fifty percent of the total bill for rooms or the total bill for rooms, food, and beverage is a factual issue that must be resolved on remand.

trary to public policy or the terms of his promise."
The principal exceptions to such delegation of a con-
tractual duty relate to "contracts for personal services
and to contracts for the exercise of personal skill or
discretion." *Id.* at comment c. 3 Williston, Contracts,
§ 411, p 20 similarly provides that an obligor may
delegate a contractual duty "provided the duty does
not require personal performance." Further, it states
that personal performance will not be implied in the
absence of an express agreement "if the duty is of
such character that performance by an agent will be
substantially the same thing as performance by the
obligor himself." *Id.* 4 Corbin, Contracts, § 865, also
indicates that unless personal performance is
required by a contract, an obligor may discharge his
duties under a contract by vicarious performance.

Here, the duty at issue is the provision of hotel
facilities for a convention. This duty is of a character
that easily lends itself to substituted performance. It
is far removed from traditional personal service con-
tracts such as an artist's contract to paint a portrait or
a doctor's contract to perform complicated surgery.
The provision of hotel facilities here does not include
any genuine expectation of personal performance,
whether for the maintenance of the rooms or confer-
ence facilities, the preparation of meals, or the provi-
sion of bellhop or valet services. There is utterly
nothing in the character of the services at issue or in
the contract language itself that indicates that per-
sonal performance of any sort was required.[16]

---

[16] Further, to contend that a personal service element was introduced
into consideration by the alleged representation that the hotel would have
union staff is unavailing because we have concluded that the merger

In addition, the letter of agreement itself between the parties specifically stated: "This contract shall be binding on and for the benefit of the parties *and their successors.*" (Emphasis supplied.) Such language "tends to indicate that the promised performance is not personal." Restatement Contracts, 2d, § 323, p 35, comment b.   See also 4 Corbin, Contracts, § 871. Accordingly, we remain convinced that CMC was free to assign its rights and delegate its duties under the letter of agreement to defendants. To construe an altogether typical contract for hotel services as one involving personal services would be to impair the general rule allowing the delegation of contractual duties by enabling the personal services exception to consume the rule.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

O'CONNELL, J., concurred.

HOLBROOK, JR., J., (*dissenting*).  I respectfully dissent.

The event that precipitated this legal dispute was Carol Management's sale of the resort to defendants, without informing plaintiff during contract negotiations that the resort was for sale or that a sale was pending, and defendants' subsequent firing of the resort's union staff, less than one month after the contract with plaintiff was negotiated and signed. The contract—drafted by Carol Management—included a standardized integration or merger clause, but was silent regarding plaintiff's acknowledged requirement

---

clause made consideration of any such parol evidence inadmissible and nullified any such representation.

that the resort employ a union-represented staff. Attempts to pigeonhole these unusual facts into established black-letter rules of contract law lead to harsh and unintended results. Hard cases do, indeed, make bad law.[1]

The contract's merger clause—"a merger of all proposals, negotiations and representations with reference to the subject matter and provisions"—appears plain and unambiguous. While it is often stated that courts may not create an ambiguity in a contract where none exists, and that parol evidence is generally not admissible to vary or contradict the terms of a written contract, Professor Corbin acknowledges that strict adherence to these rules can be problematic:

> The fact that the [parol evidence] rule has been stated in such a definite and dogmatic form as a rule of admissibility is unfortunate. It has an air of authority and certainty that has grown with much repetition. Without doubt, it has deterred counsel from making an adequate analysis and research and from offering parol testimony that was admissible for many purposes. Without doubt, also it has caused a court to refuse to hear testimony that ought to have been heard. The mystery of the written word is still such that a paper document may close the door to a showing that it was never assented to as a complete integration.
>
> No injustice is done by exclusion of the testimony if the written integration is in fact what the court assumes or decides that it is. . . .
>
> The trouble is that the court's assumption or decision as to the completeness and accuracy of the integration may be quite erroneous. *The writing cannot prove its own completeness and accuracy. Even though it contains an*

---

[1] Paraphrasing Justice Holmes' statement, "Great cases, like hard cases, make bad law." *Northern Securities Co v United States*, 193 US 197, 400-401; 24 S Ct 436; 48 L Ed 679 (1904).

*express statement to that effect, the assent of the parties
thereto must still be proved. Proof of its completeness and
accuracy, discharging all antecedent agreements, must be
made in large part by the oral testimony of parties and
other witnesses.* The very testimony that the "parol evi-
dence rule" is supposed to exclude is frequently, if not
always, necessary before the court can determine that the
parties have agreed upon the writing as a complete and
accurate statement of terms. The evidence that the rule
seems to exclude must sometimes be heard and weighed
before it can be excluded by the rule. This is one reason
why the working of this rule has been so inconsistent and
unsatisfactory. This is why so many exceptions and limita-
tions to the supposed rule of evidence have been recog-
nized by various courts.

There is ample judicial authority showing that, in deter-
mining the issue of completeness of the integration in writ-
ing, evidence extrinsic to the writing itself is admissible.
*The oral admissions of the plaintiff that the agreement
included matters not contained in the writing may be
proved to show that it was not assented to as a complete
integration, however complete it may look on its face.* On
this issue, parol testimony is certainly admissible to show
the circumstances under which the agreement was made
and the purposes for which the instrument was executed. [3
Corbin, Contracts, § 582, pp 447-451  (emphasis added).]

And, in § 583 of his treatise, Professor Corbin
continues:

No written document can prove its own execution or that
it was ever assented to as a complete integration, sup-
planting and discharging what preceded it. . . . There are
plenty of decisions that additional terms and provisions can
be proved by parol evidence, thereby showing that the writ-
ten document in court is not a complete integration. This is
true, even though it is clear that the additional terms form a
part of one contractual transaction along with the writing.
[3 Corbin on Contracts, § 583, pp 465-467.]

Accord *Stimac v Wissman*, 342 Mich 20, 26-27; 69 NW2d 151 (1955) (extrinsic evidence was admissible regarding a collateral independent promise so as to give full effect to the intent of the contracting parties); Restatement Contracts, 2d, § 216, comment e, p 140 (observing that a merger "clause does not control the question of whether the writing was assented to as an integrated agreement").

The fact that plaintiff's representative read and signed the contract does not obviate the applicability of the principles outlined in Corbin, §§ 582 and 583. Indeed, Professor Corbin illustrates the principles of the section by analyzing the case of *Int'l Milling Co v Hachmeister, Inc*, 380 Pa 407; 110 A2d 186 (1955), in which the parties entered into a contract for the sale and purchase of flour. During negotiations, buyer insisted that each shipment of flour meet certain established specifications and that such a provision be included in the contract. Seller refused to put the provision in the contract, but agreed to write a confirmation letter to buyer tying in the required specifications. Buyer placed a written order, indicating that the flour must meet the required specifications. Seller sent to buyer a printed contract form, which contained none of the specifications, but did contain an express integration clause. Seller also sent a separate letter assuring delivery in accordance with the required specifications. Buyer signed the written contract form. When a subsequent shipment of flour failed to meet the specifications, buyer rejected it and canceled all other orders. The Pennsylvania Supreme Court held that extrinsic evidence of the parties' negotiations and antecedent agreements was admissible with regard to the issue whether buyer had

assented to the printed contract form as a complete and accurate integration of the contract, *notwithstanding its express provision to the contrary.* Corbin, *supra* at 458.[2] Professor Corbin notes that the court's decision was fully supported by § 582, and explained at p 459:

> It appears that in the instant case the buyer's evidence was very strong, so strong that it would be a travesty on justice to keep it from the jury. This is not because the express provision of integration was concealed from the buyer; he was familiar with the printed contract form and knew that the provision was in it and the specifications were not. The court rightly refuses to deprive him of the opportunity to prove that its statement was untrue. . . . Bear in mind, however, that throughout the chapter the author has warned against the acceptance of flimsy and implausible assertions by parties to what has turned out to be a losing contract.

Section 582 of Corbin, allowing admission of extrinsic evidence with regard to the threshold question whether in fact the parties mutually assented to the written document as a completely integrated contract, does not contradict, but rather dovetails with, § 578, on which the lead opinion relies. Indeed, in § 578, p 402, Professor Corbin hinges a finding of conclusiveness of an express integration clause on whether the written document was *"mutually assented to."* Further, in language excerpted out of the lead opinion's quotation of § 578, Professor Corbin observes:

---

[2] "The presence of an integration clause cannot invest a writing with any greater sanctity than the writing merits where, as here, it assuredly does not fully express the essential elements of the parties' undertakings." *Hachmeister, supra* at 417.

> The fact that a written document contains one of these express provisions does not prove that the document itself was ever assented to or ever became operative as a contract. Neither does it exclude evidence that the document was not in fact assented to and therefore never became operative.

> \* \* \*

> . . . [P]aper and ink possess no magic power to cause statements of fact to be true when they are actually untrue. Written admissions are evidential; *but they are not conclusive.* [*Id.* at 405, 407 (emphasis added).]

Thus, examination of the written document alone is insufficient to determine its completeness; extrinsic evidence that is neither flimsy nor implausible is admissible to establish whether the writing was in fact intended by the parties as a completely integrated contract. See *Brady v Central Excavators, Inc,* 316 Mich 594; 25 NW2d 630 (1947); *In re Frost,* 130 Mich App 556, 562, n 1; 344 NW2d 331 (1983) (parol evidence admissible where it was clear from the face of the writing that the writing did not contain the complete agreement as assented to by the parties); *Franklin v White,* 493 NE2d 161, 166 (Ind, 1986) ("An integration clause is only some evidence of the parties' intentions. The trial court should consider an integration clause along with all other relevant evidence on the question of integration."); *Sutton v Stacey's Fuel Mart, Inc,* 431 A2d 1319, 1322, n 3 (Me, 1981) (citing Restatement Contracts, 2d for the proposition that a "merger clause does not control the question of whether a writing was intended to be a completely integrated agreement"); Restatement Contracts, 2d, § 209, comment b, p 115 ("Written contracts . . . may include an explicit declaration that

there are no other agreements between the parties, but such a declaration may not be conclusive.").

"The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties. To this rule all others are subordinate." *McIntosh v Groomes*, 227 Mich 215, 218; 198 NW 954 (1924). It is undisputed in this case that plaintiff's decision to hold its convention at the resort was predicated on the understanding of the representatives for both defendants' predecessor and plaintiff that the resort employed a unionized staff. Had plaintiff been made aware that the resort was for sale or that a sale was pending, I believe it is reasonable to assume that plaintiff's representative would have insisted that such a clause be incorporated into the agreement. Courts should not require that contracting parties include provisions in their agreement contemplating every conceivable, but highly improbable, manner of breach. In my opinion, the circumstances surrounding execution of the contract, as well as the material change in circumstance that occurred when the resort was sold and the union staff fired, establishes as a matter of law that plaintiff did not assent to a completely integrated agreement. Corbin's warning against the admission of "flimsy and implausible" evidence is not implicated here.

Accordingly, I would affirm the trial court's order granting summary disposition in favor of plaintiff pursuant to MCR 2.116(C)(10).[3]

---

[3] Although not raised by either party, I believe a valid argument also could have been made that no contract existed between plaintiff and defendant, because the party with whom plaintiff negotiated the contract was Carol Management, not defendant. *Gregory v Wendell*, 40 Mich 432, 443 (1879) ("No man can be compelled against his will, to accept another contracting party in place of the one he has dealt with, even though a contract with such other party may be equally valuable, and in its results

exactly the same."). Carol Management's sale of the resort to defendant could be interpreted as either a repudiation of the contract or as an offer to plaintiff of a novation. See 4 Corbin, Contracts, § 867, pp 462-463; *Harrington-Wiard Co v Blomstrom Mfg Co*, 166 Mich 276, 286-288; 131 NW 559 (1911) (discussing elements of a novation). In either event, plaintiff would have been entitled to a refund of its deposit whether the contract was determined to be repudiated by Carol Management or canceled because of plaintiff's failure to assent to a novation.