*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MASS2MEDIA, LLC, also known as PX2
HOLDINGS, doing business as PRECISION
EXTRACTIONS SOLUTION,

        Plaintiff/Counterdefendant-Appellee,

v

DION CIMINI,

        Defendant/Counterplaintiff-Appellant.

UNPUBLISHED
March 30, 2023

No. 357973
Oakland Circuit Court
LC No. 2019-178564-CB

MASS2MEDIA, LLC, also known as PX2
HOLDINGS, doing business as PRECISION
EXTRACTIONS SOLUTION,

        Plaintiff/Counterdefendant-Appellant,

v

DION CIMINI,

        Defendant/Counterplaintiff-Appellee.

No. 360357
Oakland Circuit Court
LC No. 2019-178564-CB

Before: CAVANAGH, P.J., and MARKEY and BORRELLO, JJ.

PER CURIAM.

In Docket No. 357973, defendant appeals by right the trial court's June 10, 2021 judgment after a bench trial (1) entering a declaratory judgment in favor of plaintiff that plaintiff correctly calculated the amount of compensation owed to defendant after his employment was terminated to be $61,569.74, (2) dismissing all of plaintiff's counterclaims, (3) finding by clear and convincing evidence that all of defendant's defenses and counterclaims were "frivolous" because they were based on "lies" and defendant's trial testimony was not credible, and (4) concluding that

-1-

defendant was liable for sanctions pursuant to MCR 1.109 and MCL 600.2591 in an amount to be determined. In Docket No. 360357, plaintiff appeals by right the trial court's July 28, 2021 opinion and order denying plaintiff an award of reasonable attorney fees on the basis that plaintiff failed to meet its burden of proof. For the reasons set forth in this opinion, we affirm in part and vacate in part.

## I. BACKGROUND

This case involves a dispute over the amount of compensation owed to defendant in commissions following the termination of his employment as a sales representative with plaintiff. The parties do not contest the trial court's findings that defendant began his employment with plaintiff in 2017 as a salaried employee and that he moved to a sales representative role in approximately January 2019, where he earned commission. There was some dispute at trial whether defendant, in his sales role, earned a salary in addition to his sales commission or whether he was compensated entirely through commissions. However, the trial court found that defendant's compensation was solely based on commissions and that defendant sometimes received "draws" or "advances made during the course of the year in connection with future sales commissions." The trial court also found that there was an agreement reached at the beginning of defendant's tenure as a sales representative regarding splitting certain commissions with defendant's cousin and fellow sales representative, Steve Cimini. The relevant split involved new sales in defendant's and Steve's joint sales territory of California and was 70%-30% in favor of the more experienced sales representative, Steve.

Defendant was terminated from his employment in November 2019. When defendant's employment was terminated, plaintiff determined that it owed defendant $61,569.74 in compensation. Defendant claimed that he was owed more than that amount. Plaintiff instituted this declaratory action seeking a ruling resolving this dispute. Defendant filed counterclaims for breach of contract and violation of MCL 600.2961, which provides for actions for unpaid sales commissions.

The matter proceeded to a bench trial. Following the trial, the trial court issued a written opinion setting forth its findings of fact, conclusions of law, and judgment. The court determined that plaintiff was entitled to declaratory judgment in its favor that it had correctly calculated defendant's outstanding compensation to be $61,569.74. Specifically, the trial court determined that the relevant controlling contract at the time of defendant's termination was the most recent employment agreement executed between the parties in July 2019. The trial court further determined that defendant was contractually entitled to solely commission-based compensation with his "draws" being treated as advances against future commissions and that defendant was entitled to 30% of commissions from new sales in California.

Additionally, the trial court also dismissed defendant's counterclaims and determined that all of defendant's defenses and counterclaims were frivolous because "they were based on lies." Accordingly, the trial court imposed sanctions against defendant in an amount to be determined. Following an evidentiary hearing, the trial court declined to award attorney fees to plaintiff because the court found that plaintiff had failed to prove that the attorney fees it sought were reasonable.

## II. ANALYSIS

On appeal, defendant argues that the trial court erred by deciding the case in plaintiff's favor with respect to the amount of compensation owed to defendant and, further, that the trial court clearly erred by determining that defendant's defenses and counterclaims were frivolous such that defendant was liable for sanctions.

"We review a trial court's findings of fact in a bench trial for clear error and its conclusions of law de novo." *Chelsea Investment Group LLC v City of Chelsea*, 288 Mich App 239, 250; 792 NW2d 781 (2010). "A decision is clearly erroneous when, although there may be evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *Pioneer State Mut Ins Co v Michalek*, 330 Mich App 138, 145-146; 946 NW2d 812 (2019) (quotation marks and citation omitted). "The trial court's findings are given great deference because it is in a better position to examine the facts." *Chelsea Investment Group*, 288 Mich App at 251. We review issues of contract interpretation, including whether contract language is ambiguous, de novo as questions of law. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003).

The court has a duty to interpret a contract where it may be "construed by its terms alone," but the trier of fact determines the meaning of a contract "where its meaning is obscure and its construction depends upon other and extrinsic facts in connection with what is written." *Id*. at 469 (quotation marks and citation omitted). The meaning of an ambiguous contract presents a question of fact regarding the parties' intent that is to be determined by the trier of fact. *Id*. Accordingly, under such circumstances, "the fact finder must interpret the contract's terms, in light of the apparent purpose of the contract as a whole, the rules of contract construction, and extrinsic evidence of intent and meaning." *Id*. (quotation marks and citation omitted).

Here, defendant concedes on appeal that the trial court properly found that the July 2019 employment contract was the governing agreement in effect when defendant's employment was terminated. Defendant contends that this contract, along with the expressly incorporated July 2019 sales policy, was unambiguous and the trial court was thus precluded from considering extrinsic evidence to conclude that there existed an agreement to split certain commissions 70/30 between Steve and defendant. Defendant asserts that the July 2019 contract superseded any prior agreement regarding a 70/30 commission split with Steve.

The issue presented is one of contract interpretation. "The primary goal in the construction or interpretation of any contract is to honor the intent of the parties." *UAW-GM Human Resources Ctr v KSL Recreation Corp*, 228 Mich App 486, 491; 579 NW2d 411 (1998) (quotation marks and citation omitted). "If the language of the contract is unambiguous, we construe and enforce the contract as written." *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 375; 666 NW2d 251 (2003). "[P]arol evidence of contract negotiations, or of prior or contemporaneous agreements that contradict or vary the written contract, is not admissible to vary the terms of a contract which is clear and unambiguous." *UAW-GM*, 228 Mich App at 492 (quotation marks and citation omitted).

There are some exceptions to the general prohibition on parol evidence, such as "the rare situation when the written document is obviously incomplete 'on its face' and, therefore, parol evidence is necessary 'for the filling of gaps.' " *Id*. at 495 (citation omitted). Accordingly, "[e]xtrinsic evidence may be used to supplement, but not contradict, the terms of the written

agreement." *Kelly-Stehney & Assoc, Inc v MacDonald's Indus Prod, Inc (On Remand)*, 265 Mich App 105, 114; 693 NW2d 394 (2005) (quotation marks and citation omitted). See also *Union Oil Co of California v Newton*, 397 Mich 486, 488; 245 NW2d 11 (1976) ("If there is no inconsistency, the parol evidence is admissible."). It is also well settled that if the contract language is ambiguous, then the trier of fact may consider relevant extrinsic evidence without violating the parol evidence rule. *Klapp*, 468 Mich at 469-470. As our Supreme Court has explained regarding these principles:

> The parol evidence rule does not preclude the admission of parol or extrinsic evidence for the purpose of aiding in the interpretation or construction of a written instrument, where the language of the instrument itself taken alone is such that it does not clearly express the intention of the parties or the subject of the agreement. Such evidence is admitted not to add to or detract from the writing, but merely to ascertain what the meaning of the parties is. Thus a written instrument is open to explanation by parol or extrinsic evidence *when it is expressed in short and incomplete terms*, or is fairly susceptible of two constructions, or where the language employed is vague, uncertain, obscure, or ambiguous, and where the words of the contract must be applied to facts ascertainable only by extrinsic evidence, a resort to such evidence is necessarily permitted. [*Id*. at 470 (quotation marks and citation omitted; emphasis added).]

Here, Section 3.1(d) of the July 2019 employment contract expressly provided that on "a case-by-case basis, certain sales commissions may be shared with other Company sales representatives for sales facilitated and/or managed in concert with other sales representatives." Hence, the trial court was permitted to consider extrinsic evidence about the existence of split agreements pertaining to defendant's commissions because extrinsic evidence was necessary to supplement the facially incomplete terms of the contract and was not offered to contradict the terms of the contract. *Id*.; *Union Oil Co*, 397 Mich at 488; *Kelly-Stehney & Assoc*, 265 Mich App at 114; *UAW-GM*, 228 Mich App at 495. Defendant has failed to demonstrate that the trial court made an error of law by considering extrinsic evidence.

To the extent that defendant argues that the trial court should have given more or less weight to certain evidence or otherwise reached different conclusions from the evidence, these arguments bear on the trial court's fact-finding function in resolving alleged conflicts in the trial evidence. The trial court found that plaintiff had accurately determined the amount of commission owed to defendant. The trial court specifically found the testimony of the witnesses associated with plaintiff to be credible and defendant's testimony not credible. This Court defers to the trial court's ability to gauge credibility. *Andrusz v Andrusz*, 320 Mich App 445, 455; 904 NW2d 636 (2017) ("To the extent a factual determination turns on the credibility of a witness, this Court generally defers to the trial court.") (quotation marks and citation omitted). Defendant has not directed our attention to any evidence that would establish that the trial court's findings of facts were clearly erroneous by leading us to hold a definite and firm conviction that a mistake was made. *Pioneer State Mut Ins*, 330 Mich App at 145-146. Instead, defendant has merely attempted to relitigate the meaning and importance of various pieces of factual evidence in this Court, contrary to the proper scope of our appellate review. *Chelsea Investment Group*, 288 Mich App at 250-251.

Thus, having failed to establish either an error of law subject to our de novo review or a clearly erroneous error of material fact, defendant has failed to show that that the trial court's conclusion entering a declaratory judgment in favor of plaintiff constituted error requiring reversal.

Next, defendant argues that the trial court erred by finding that his defenses and counterclaims were frivolous such that he was liable for sanctions under MCR 1.109 and MCL 600.2591. This Court reviews for clear error a trial court's determination that a party's claim or defense was frivolous. *Pioneer State Mut Ins*, 330 Mich App at 145.

MCL 600.2591 provides:

> (1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

> (2) The amount of costs and fees awarded under this section shall include all reasonable costs actually incurred by the prevailing party and any costs allowed by law or by court rule, including court costs and reasonable attorney fees.

> (3) As used in this section:

> (a) "Frivolous" means that at least 1 of the following conditions is met:

> (*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

> (*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

> (*iii*) The party's legal position was devoid of arguable legal merit.

> (b) "Prevailing party" means a party who wins on the entire record.

MCR 1.109(E) provides in pertinent part:

> (5) Effect of Signature. The signature of a person filing a document, whether or not represented by an attorney, constitutes a certification by the signer that:

> (a) he or she has read the document;

> (b) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and

(c) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

(6) Sanctions for Violation. If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages.

(7) Sanctions for Frivolous Claims and Defenses. In addition to sanctions under this rule, a party pleading a frivolous claim or defense is subject to costs as provided in MCR 2.625(A)(2). The court may not assess punitive damages.

Here, although the trial court's conclusory decision on sanctions is unclear, it appears the trial court sanctioned defendant under the above provision because it believed he had no basis to believe that his claims were well grounded in fact and law. The fundamental premise of defendant's claims was that he was entitled to further commissions pursuant to the plain language of the contract. Considering that contracts are generally enforced by resorting only to the contract language and without relying on extrinsic evidence, we fail to see how under the circumstances of this case, defendant's disagreement about the interpretation of the contract language rises to the level of being considered frivolous simply because the trial court ultimately disagreed and found defendant not credible. A party's claim is not rendered frivolous merely because a court rejects a party's asserted legal position or the party did not ultimately prevail in the action. *Kitchen v Kitchen*, 465 Mich 654, 662, 663; 641 NW2d 245 (2002). "Not every error in legal analysis constitutes a frivolous position." *Id*. at 663.

We understand that the trial court believed defendant was lying. The trial court's opinion was written with an obvious focus on making it clear that the trial court viewed plaintiff and those associated with plaintiff as the "do-gooders" and that it viewed defendant as the "punisher."[1] The trial court labeled the section finding plaintiff was entitled to declaratory judgment in its favor with the heading "The Do-Gooders Prevail." The section imposing sanctions on defendant was labeled "The Punisher is Sanctioned." Attempts to neatly categorize people into the proverbial "good guys" and "bad guys" do not substitute for legal analysis, and as such, we conclude the trial court's legal analysis was sorely lacking. Rather than an analytical analysis of facts and law providing a basis for its conclusion of granting sanctions, the trial court's approach reads more like sanctions were imposed as a form of punitive damages, contrary to MCR 1.109(E)(7). Consequently, we conclude that the trial court clearly erred by imposing sanctions. Having so found, plaintiff's cross-appeal regarding the trial court's decision not to award it any attorney fees as sanctions is

---

[1] These are the trial court's terms, not our terms.

moot[2] because plaintiff is not entitled to any sanctions.  We thus vacate the trial court's order imposing sanctions, as well as the trial court's order awarding plaintiff costs as sanctions.

Affirmed in part and vacated in part.  We do not retain jurisdiction.  Neither party having prevailed in full, no costs are awarded.  MCR 7.219(A).

/s/ Mark J. Cavanagh
/s/ Jane E. Markey
/s/ Stephen L. Borrello

---

[2] "A case is moot when it presents only abstract questions of law that do not rest upon existing facts or rights.  An issue is deemed moot when an event occurs that renders it impossible for a reviewing court to grant relief."  *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998).