*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CLIENT FINANCIAL SERVICES, INC.,

Plaintiff-Appellant,

v

BEAUMONT HEALTH,

Defendant-Appellee.

UNPUBLISHED
June 20, 2019

No. 342875
Oakland Circuit Court
LC No. 2017-162332-CB

Before: BECKERING, P.J., and CAVANAGH and RONAYNE KRAUSE, JJ.

PER CURIAM.

In this action for breach of contract, plaintiff appeals as of right the trial court's opinion and order granting summary disposition to defendant under MCR 2.116(C)(8) (failure to state a claim upon which relief can be granted). We affirm.

## I. BACKGROUND

In April 2016, plaintiff (a collections agency) and defendant (a hospital) entered into an agreement titled, "Master Services Agreement" (MSA).[1] The pertinent aspect of the agreement allowed plaintiff to provide collection services to defendant for defendant's "self-pay" accounts (accounts set up for defendant's patients to pay their medical bills directly, rather than those medical bills that are paid by the patients' insurance companies), and "bad debt" accounts (accounts that have not been paid while in self-pay "pursuant to a payment or agreement within 121 days of [the] account being assigned to [plaintiff] in self-pay." If plaintiff succeeded in its collection efforts, then defendant would pay plaintiff a contingency fee, which varied based on the type of account plaintiff successfully collected.

---

[1] Subsidiaries of defendant were also parties to the agreement; however, their involvement is not relevant for purposes of this appeal.

The MSA contained two key provisions. The first provision dealt with the ability of defendant (referred to as "Buyer") to elect to use the services of plaintiff (referred to as "Vendor"), stating, in relevant part:

> Nothing contained herein shall be considered a guarantee of purchase by any Buyer. The terms and conditions set forth in this Agreement apply only to the extent that a Buyer elects to make a purchase of Vendor's products or services under the Agreement.

The second key provision in the MSA is an integration or merger clause which states, in relevant part:

> This Agreement and any exhibits and schedules properly incorporated from time to time are the complete Agreement and shall supersede any and all prior and contemporaneous understandings and Agreements either oral or in writing.

The parties agreed on two addendums to the MSA: the first addendum, titled "Self-Pay Services Addendum," involved the scope of services for self-pay accounts assigned to plaintiff, while the second addendum, titled "Bad Debt Services Addendum," involved the scope of services for bad debt accounts assigned to plaintiff.

According to plaintiff, after the parties executed the MSA in April 2016, plaintiff received all of defendant's "Day 1" self-pay accounts, which are self-pay accounts that are transferred to plaintiff for collection immediately upon the creation of the account—i.e., Day 1. In May 2017, however, defendant hired a new Vice President, at which time defendant announced a "change in policy." This change in policy would "delay the transfer to [plaintiff] of self-pay collection files from Day 1 to Day 30, beginning June 1, 2017," meaning that plaintiff would receive self-pay accounts 30 days after their creation, rather than on Day 1. Delaying the transfer of self-pay accounts made collection efforts more difficult for plaintiff because the longer the self-pay account remained outstanding, the less likely it was that plaintiff would succeed in its collection efforts. According to plaintiff, defendant's policy change also "announced [defendant's] intention to abandon its exclusive arrangement with [plaintiff], and turn over self-pay accounts to competing collection agencies, thereby depriving [plaintiff] of substantial income it had been promised under the [MSA]."

Plaintiff filed a complaint against defendant, alleging that defendant breached the terms of the MSA by (1) failing to transfer all of defendant's self-pay accounts to plaintiff for collection on Day 1, and (2) failing to retain plaintiff as the exclusive collection agency for all of defendant's self-pay accounts.[2] Plaintiff alleged that, in drafting the MSA, the parties had intended for defendant to transfer all of defendant's self-pay accounts to plaintiff on Day 1.

---

[2] Plaintiff also alleged that defendant was unjustly enriched by failing to transfer its self-pay accounts to plaintiff and using other vendors (plaintiff's competitors) for all of defendant's Day 1 self-pay accounts. The trial court dismissed plaintiff's unjust enrichment claim, and plaintiff does not challenge that ruling on appeal.

Defendant filed a motion for summary disposition under MCR 2.116(C)(8), arguing that the express terms of the MSA were plain, unambiguous, and afforded defendant the option to elect to use plaintiff's collection services for defendant's self-pay accounts. Defendant also argued that plaintiff's breach of contract claim not only contradicted the clear and unambiguous language of the MSA, but also rested entirely on extrinsic evidence—the testimony of defendant's representatives regarding the parties' prior negotiations—which was inadmissible under the parol-evidence rule. Defendant asserted that, because the MSA was a fully integrated agreement per the MSA's merger clause, plaintiff was barred from introducing extrinsic evidence that contradicted the clear, unambiguous terms of the MSA. Plaintiff responded, arguing that, while the MSA does not contain an express statement referencing Day 1 versus Day 30 self-pay accounts, the parties intended for defendant to transfer all of its self-pay accounts to plaintiff on Day 1. Plaintiff also argued that the "gap filling" exception to the parol-evidence rule should apply to interpret the MSA with extrinsic evidence because the MSA was incomplete on its face.

In granting defendant's motion for summary disposition, the trial court determined that the MSA, as written, did not provide plaintiff with the exclusive right to process Day 1 self-pay accounts, and therefore, defendant could not have breached the MSA by refusing to transfer those accounts to plaintiff. Rather, the trial court held that defendant had the right to elect when it wished to use plaintiff's collection services. With respect to plaintiff's attempt to introduce extrinsic evidence, the trial court determined that such an attempt was inappropriate given the parties' merger clause and the parol-evidence rule.

Plaintiff now appeals, arguing that the trial court erred in granting summary disposition to defendant because (1) defendant's failure to transfer all of its self-pay accounts to plaintiff on Day 1 violated the terms of the MSA, and (2) parol evidence is admissible to "fill the gap" in the MSA regarding defendant's obligation to transfer its self-pay accounts to plaintiff on Day 1.

## II. BREACH OF CONTRACT

Plaintiff argues that the trial court erred in granting defendant's motion for summary disposition because defendant's failure to transfer all of its self-pay accounts to plaintiff on Day 1 violated the terms of the MSA. We disagree.

We review de novo a trial court's decision on a motion for summary disposition. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). The standard for reviewing a motion for summary disposition granted under MCR 2.116(C)(8) is as follows:

> A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant. A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. When deciding a motion brought under this section, a court considers only the pleadings. [*Maiden v Rozwood*, 461 Mich 109, 119-120; 597 NW2d 817 (1999) (quotation marks and citations omitted).]

Issues involving the interpretation of contracts are also subject to de novo review. *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 196; 826 NW2d 197 (2012). This Court's "primary goal in interpreting any contract is to give effect to the parties' intentions at the time they entered into the contract." *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 85; 878 NW2d 816 (2016). The parties' intent is determined "by interpreting the language of the contract according to its plain and ordinary meaning." *Id*. at 85-86. "[U]nless a contract provision violates law or one of the traditional defenses to the enforceability of a contract applies, a court must construe and apply unambiguous contract provisions as written." *Rory*, 473 Mich at 461. Courts must "give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 468; 663 NW2d 447 (2003). "A contract is ambiguous if its words may reasonably be understood in different ways." *UAW-GM Human Resource Ctr v KSL Recreation Corp*, 228 Mich App 486, 491; 579 NW2d 411 (1998) (quotation marks and citation omitted). "Where a written contract is ambiguous, a factual question is presented as to the meaning of its provisions, requiring a factual determination as to the intent of the parties in entering the contract." *Klapp*, 468 Mich at 469, quoting 11 Williston, Contracts (4th ed), § 30:7, pp 87-91.

"A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Const, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). The only issue on appeal is whether plaintiff's claim, that defendant breached the MSA by failing to transfer all of its self-pay accounts exclusively to plaintiff on Day 1, is "so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." See *Maiden*, 461 Mich at 119 (quotation marks and citation omitted). To answer this question, we look to the terms of the MSA.

The MSA stated, "Nothing contained herein shall be considered a guarantee of purchase by [defendant]. The terms and conditions set forth in this Agreement apply only to the extent that [defendant] elects to make a purchase of [plaintiff's] products or services under the Agreement." The parties' Self-Pay Services Addendum also contained various provisions regarding the parties' obligations to one another once defendant transferred its self-pay accounts to plaintiff. Indeed, two provisions in particular, (g) and (n), stated, in relevant part:

[Plaintiff] and [defendant] agree to the following terms and conditions with regard to "Self[-]Pay Services" purchased by [defendant]:

\* \* \*

g) Account resolution shall be achieved within 121 days of account *placement* unless a payment arrangement is established under the terms set forth by [defendant].

\* \* \*

-4-

n) [Defendant] may handle or transfer incoming calls pertaining to accounts *assigned* to [plaintiff] should patient(s) decide to call [defendant]. [Emphasis added.]

There is nothing ambiguous about the MSA or its terms. The first page of the agreement demonstrates the optional or elective nature of the MSA because defendant could "elect[] to make a purchase of" plaintiff's collection services if defendant chose to do so. Indeed, the provision explicitly states that the MSA is not a "guarantee of purchase" of plaintiff's collection services by defendant. Therefore, the plain and ordinary language of the MSA demonstrates that defendant could "elect[]" when, or if at all, to transfer its self-pay accounts to plaintiff. See *Bank of America*, 499 Mich at 85-86 (holding that contracting parties' intent is determined by interpreting the language of a contract according to its plain and ordinary meaning); see also *Rory*, 473 Mich at 461 ("[A] court must construe and apply unambiguous contract provisions as written.")

Plaintiff fails to point out any ambiguity within the MSA regarding when, or if, self-pay accounts were to be transferred to plaintiff. In fact, plaintiff concedes that "there is no doubt that the MSA does not contain an express statement referencing 'Day 1' vs 'Day 30' " self-pay accounts. Plaintiff asserts that the MSA's failure to state when plaintiff's services are to commence demonstrates an ambiguity within the MSA. However, defendant argues, and we agree, that this omission speaks to the optional and elective nature of the MSA. In fact, the MSA does indicate when plaintiff's services are to commence—when defendant "elects to make a purchase." Therefore, plaintiff's argument that the MSA is ambiguous is without merit.

Notwithstanding the elective nature of the MSA, plaintiff argues that defendant did in fact "make a purchase" of plaintiff's collection services by transferring Day 1 self-pay accounts to plaintiff before defendant announced its policy change in May 2017. Specifically, plaintiff argues that defendant "incorrectly interprets" the clause regarding the elective nature of the MSA by "referring to the purchase of [plaintiff's services] on a singular account basis, rather than to the purchase of [plaintiff's] services in general." Plaintiff's argument, however, contradicts the plain and ordinary language of the MSA. Defendant clearly had the option to engage plaintiff's collection services on an account-by-account basis. Indeed, it makes little sense for the parties to enter into an agreement that would require defendant to transfer *all of defendant's* self-pay accounts to plaintiff, while at the same time including a provision that allows defendant to *choose when to* "*make a purchase*" of plaintiff's collection services for those self-pay accounts. (Emphasis added). The plain and ordinary meaning of the MSA and its elective nature is supported by two provisions in the Self-Pay Services Addendum (provisions (g) and (n)), which indicate that self-pay accounts had to be "place[d]" or "assigned" to plaintiff in order to trigger the parties' obligations. Even the Bad Debt Services Addendum defined a bad debt as "an account that has not been paid while in self-pay (not paid pursuant to a payment or agreement within 121 days of account being *assigned* to [plaintiff] in self-pay)." (Emphasis added.) Therefore, plaintiff's interpretation of the MSA (that defendant made a purchase of plaintiff's collection services in general, which required defendant to transfer all of its self-pay accounts to plaintiff on Day 1) contradicts the express terms of the MSA and its elective nature. See *Bank of America*, 499 Mich at 85-86; *Rory*, 473 Mich at 461.

-5-

Plaintiff also argues that the terms of the Self-Pay Services Addendum demonstrate that the parties intended for defendant to transfer all of its self-pay accounts to plaintiff on Day 1 because both parties' obligations in that addendum cannot be met unless defendant transferred its self-pay accounts on Day 1. However, nothing in the Self-Pay Services Addendum required defendant to transfer all of its self-pay accounts to plaintiff on Day 1. Rather, plaintiff's argument speaks more to the difficulty in successfully collecting on self-pay accounts that are transferred to plaintiff on Day 30 or later. For example, plaintiff argues that provision (g) in the Self-Pay Services Addendum, which requires plaintiff to resolve self-pay accounts within 121 days of placement (thereby becoming a "bad debt"), illustrates that the parties intended for defendant's self-pay accounts to be transferred to plaintiff on Day 1. Plaintiff argues that if the parties intended for the self-pay account to be transferred at Day 30, then the account would become a "bad debt" only 91 days after plaintiff received it. However, the parties defined a "bad debt" as an account that has not been paid while in self-pay "pursuant to a payment or agreement *within 121 days of account being assigned to* [*plaintiff*] *in self-pay.*" (Emphasis added.) That is, the 121-day deadline for plaintiff to resolve the self-pay account does not begin until defendant actually assigns the self-pay account to plaintiff for collection. Therefore, plaintiff can meet its obligation in provision (g) regardless of whether the self-pay account is transferred on Day 1 or Day 30.

Plaintiff asserts that other provisions of the Self-Pay Services Addendum "would be for naught unless [plaintiff] was to be responsible for collecting patient self-pay accounts from Day 1." Similar to the 121-day deadline to resolve self-pay accounts, all of the other provisions in the Self-Pay Services Addendum can be accomplished regardless of when those self-pay accounts are assigned to plaintiff. The mere fact that plaintiff will have a more difficult time collecting on those self-pay accounts after Day 1 does not establish a claim for breach of contract. See *UAW-GM*, 228 Mich App at 492 ("[D]isappointed parties will have a great incentive to describe circumstances in ways that escape the explicit terms of their contracts.") (Quotation marks and citation omitted.) Accordingly, the trial court properly granted defendant's motion for summary disposition.

### III. PAROL EVIDENCE

Plaintiff also argues that parol evidence is admissible to "fill the gap" in the MSA regarding defendant's obligation to transfer its self-pay accounts to plaintiff on Day 1. We disagree.

"Whether extrinsic evidence should be used in contract interpretation is a question of law that this Court reviews de novo." *In re Kramek Estate*, 268 Mich App 565, 573; 710 NW2d 753 (2005).

The parol-evidence rule provides that "[p]arol evidence of contract negotiations, or of prior or contemporaneous agreements that contradict or vary the written contract, is not admissible to vary the terms of a contract which is clear and unambiguous." *UAW-GM*, 228 Mich App at 492 (quotation marks and citation omitted).

> Where the parties have included an express integration or merger clause within the agreement, "it is conclusive and parol evidence is not admissible to show that the agreement is not integrated except in cases of fraud that invalidate the

integration clause or where an agreement is obviously incomplete 'on its face' and, therefore, parol evidence is necessary for the 'filling of gaps.' " [*Hamade v Sunoco, Inc (R & M)*, 271 Mich App 145, 169; 721 NW2d 233 (2006), quoting *UAW-GM*, 228 Mich App at 502.]

The MSA contained an integration clause, which stated, "This Agreement and any exhibits and schedules properly incorporated from time to time are the complete Agreement and shall supersede any and all prior and contemporaneous understandings and Agreements either oral or in writing." Accordingly, parol evidence of the parties' prior negotiations regarding Day 1 self-pay accounts is inadmissible absent fraud or evidence that the agreement was incomplete on its face. See *Hamade*, 271 Mich App at 169; *UAW-GM*, 228 Mich App at 502. On appeal, plaintiff only alleges that the MSA was incomplete on its face.

Plaintiff fails to establish the evidence of a "gap" in the MSA rendering it incomplete. Plaintiff argues that, because the MSA does not contain "any section setting forth when [plaintiff's] services are to commence, . . . [e]xtrinsic evidence must be allowed to demonstrate that both sides fully understood and agreed that [plaintiff's] services were to begin from the inception of the account"—i.e., Day 1. However, as discussed above, the MSA *does* indicate when plaintiff's services are to commence—when defendant "elects to make a purchase" of plaintiff's services by transferring the account, either a self-pay account or a bad-debt account, to plaintiff for collection. Therefore, the MSA is complete on its face, and there are no gaps to fill so as to permit the introduction of parol evidence. See *Hamade*, 271 Mich App at 169; see also *UAW-GM*, 228 Mich App at 495 ("The conclusion that parol evidence is not admissible to show that a written agreement is not integrated when the agreement itself includes an integration clause is consistent with the general contract principles of honoring parties' agreements as expressed in their written contracts and not creating ambiguities where none exist.")

In summary, the trial court did not err in granting defendant's motion for summary disposition under MCR 2.116(C)(8) because, under the plain and ordinary meaning of the MSA, defendant was not required to transfer all of its self-pay accounts to plaintiff on Day 1. Further, plaintiff's attempt to introduce parol evidence was improper because the MSA was a fully integrated agreement that was complete on its face.

Affirmed. Defendant is entitled to costs as the prevailing party. See MCR 7.219(A).

/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Amy Ronayne Krause

-7-